E. J. O'NEILL, Executor of the Estate of Alice Pearl Marshall, Deceased, Appellant,

v.

Kenneth R. ALFORD, Appellee.

No. 15966.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 19, 1972.

**936**

------◆------

E. J. O'Neill, Houston, for appellant.

Milton Schwartz, Houston, for appellee.

PEDEN, Justice.

Mr. Alford brought this suit for a declaratory judgment against Mr. O'Neill, the executor of the will of Mrs. Alice Marshall, asserting that as devisee of 69 shares of Eastman Kodak Co. stock he is entitled to receive the shares resulting from a two-for-one stock split effected by Eastman Kodak after execution of the will but before the death of Mrs. Marshall.

After a non-jury hearing, the trial court entered a judgment awarding the shares in question to Mr. Alford. On appeal Mr. O'-Neill's points of error are that the trial court erred by 1) failing to consider the intent of the testatrix as shown from the four corners of the instrument as being a controlling factor in proper determination of heirship; 2) not giving due consideration to the rule that the intention of the testatrix as determined by considering the entire will must prevail over the language of a single clause; 3) not giving consideration to the presumption of law that where it is unclear whether the testatrix intended a general or specific devise, the courts do not favor specific devises; 4) finding that the additional shares belonged to appellee without determining whether it was a general or specific legacy; 5) failing to find that the bequest of Eastman Kodak shares was a general bequest, and 6) holding as a matter of law that appellee was entitled to the 67 shares with all increases and

dividends. The trial court's judgment is silent as to the matters considered in deciding this case, and the record does not reflect that findings of fact or conclusions of law were made or requested. We find no basis for appellant's contentions as to how the trial court reached its decision.

The agreed statement of facts consists of these stipulations and letters:

(1) "Alice Pearl Marshall, the deceased, was the registered owner of sixty-eight shares of Eastman Kodak Company common stock on November 29, 1966, and on that date she executed the will in question;"

(2) "On May 24, 1968, the said Alice Pearl Marshall received and was the registered owner of an additional sixty-eight shares of Eastman Kodak Company common stock as a result of a two-for-one stock split on said date;"

(3) "The said Alice Pearl Marshall died on January 31, 1969, without revoking, changing or amending said will dated November 29, 1966, which will was admitted to probate on the 4th day of March, 1969, in Cause No. 102,999, pending in Probate Court No. 1 of Harris County, Texas;"

(4) "The Defendant, E. J. O'Neill, qualified as Executor in said cause with letters testamentary issuing;"

(5) "Alice Pearl Marshall died seized of said 136 shares of Eastman Kodak Company common stock;"

(6) "The instrument attached to Plaintiff's original petition is a true and correct copy of the last will and testament of Alice Pearl Marshall.

"Our next stipulation will be that the Court may consider for all purposes in the adjudication of this case a letter dated March 31, 1971, from Mr. E. J. O'Neill, attorney for the Defendant, addressed to the Secretary, Eastman Kodak Company, inquiring about certain shares of Eastman Kodak stock, which stock is the subject matter of this lawsuit.

"The Court may also consider for all purposes herein in the adjudication of this cause the reply of Eastman Kodak Company to Mr. E. J. O'Neill, dated September 2, 1971, concerning the shares of stock in question and the various stock splits and dividends which accrued to the deceased prior to her death."

"          E. J. O'NEILL
          Attorney at Law
              257 The Main Building
          Houston, Texas 77002
              227–6581

AIR MAIL          March 31, 1971

The Secretary
Eastman Kodak Company
343 State Street
Rochester, New York 14650

          Re: Estate of
              Alice Pearl Marshall, Deceased

Dear Sir:

"Enclosed are Letters Testamentary issued by the local Probate Court evidencing my position as Executor of captioned estate. Among the properties of the estate were certain stock certificates issued in your company. As litigation is in process and during the course thereof it has become necessary to determine the dates of the below listed certificates, their originations (from either splits or dividends) and any other pertinent information which you can volunteer, I would deeply appreciate same. The certificates numbers and number of shares are as follows:

RC/0944554     –     1 share
RO 369341     –     68 shares

(The above two certificates were mailed on August 19, 1970, to your transfer agent, Morgan Guaranty Trust Company of New York, and in their place Certificate No. NO 368778 for 69 shares was issued to one

Kenneth R. Alford under date of August 28, 1970)

RO168854     –     34 shares
RO52823     –     1 share
RC/0685880     –     1 share
NC/0397146     –     15 shares
RC/0782856     –     16 shares

"As time is of the essence in this court dispute anything you may be able to do to expedite your reply will be greatly appreciated, and in this connection I am enclosing a stamped self-addressed envelope.

          Very truly yours,

EJO'N lj          E. J. O'Neill          "
enclosures

"The Secretary
Eastman Kodak
          Company     #2     March 31, 1971

"cc–Mr. Milton Schwartz
          Attorney at Law
          947 The Main Building
          Houston, Texas 77002          "

·    "     EASTMAN KODAK COMPANY

E. J. O'NEILL, Esq.
1212 Main Street
257 Main Building
Houston, Texas 77002

          Estate of
          Alice Pearl Marshall, Deceased

Dear Mr. O'Neill:

"I have your letter of March 31 and in response would advise you that our records show the following:

"The certificate numbered 0397146 for 15 shares was issued to Alice P. Marshall on October 21, 1955.

"The source of these 15 shares was certificates from brokerage houses. As the re-

sult of a stock dividend, certificate 0685880 dated January 25, 1957 for one share was issued to her. As a result of a stock split, certificate 782856 for 16 shares was issued to her on April 13, 1959. Certificate 0944554 for one share was issued as a stock dividend on February 10, 1964, and as a result of rounding upward for a fractional interest an additional certificate for one share, 52823, was issued on February 14, 1964. In consequence of a stock split, a certificate for 34 shares bearing the number 168853 was issued to her on May 21, 1965. And in 1968, on May 24, a certificate for 68 shares, 369341, was issued to her as a result of another stock split. At that date 136 shares were issued in her name.

"On July 21, 1970, 67 of those 136 shares were transferred to Goodbody and on August 28, 1970, 69 of those shares were transferred to Kenneth R. Alford.

"E. J. O'Neill, Esq.    —2    April 2, 1971

"I trust this information may be of assistance to you.

Sincerely yours,

LSZartman:ALY /s/ Leonard S. Zartman
                Assistant Secretary"

Mrs. Marshall's will contained, among others, eight bequests of shares of prominent corporations:

"Fourth: I give and bequeath

"(a) All of my shares of General Motors Corporation, and 25 shares of Coca Cola Corporation to my sister, Mary Louis Brubaker . . .;

"(b) One-half of my shares of American Telephone and Telegraph Co., and 19 shares of Texaco Co., and . . . to my niece, Alice Whitelock, . . .;

"(c) One-half of my shares of American Telephone and Telegraph Co., and 19 shares of Texaco Co. and . . . to my nephew, Harley Brubaker, . . .;

"(d) 220 shares of Phillips Petroleum Co., and 18 shares of Norfolk & Western Railway Co., and . . . to my niece, Marie Hamilton, . . .:

"(e) 69 shares of Eastman Kodak Co., and 30 shares of Union Pacific Railroad Co., and . . . to my nephew, Kenneth R. Alford . . .;

"(f) . . .

"(g) . . .

"(h) . . ."

We will later notice the provision in the will concerning Mrs. Marshall's residuary estate.

There was one discrepancy in the will: when Mrs. Marshall executed it she had only 68 shares of Eastman Kodak stock, but she bequeathed 69 of them to Alford. There is no evidence that she ever sold any of her Eastman Kodak shares. We assume that she mis-counted them.

Although the question presented by this case is one of first impression in Texas, it has arisen in other jurisdictions.

■ The intention of the testatrix, as it may be ascertained by considering the language of the entire instrument, must govern. Cleveland v. Cleveland, 89 Tex. 445, 35 S.W. 145 (1896); Houston Land & Trust Co. v. Campbell, 105 S.W.2d 430 (Tex.Civ.App.1937, writ ref.).

In construing wills to resolve conflicting bequests, our courts have often based their decisions on a preliminary determination of whether the legacy was specific or general. See Houston Land & Trust Co. v. Campbell, supra.

This determination, as applied to stock legacies, has led to many bewildering refinements and contradictions, which have

given rise to a strong presumption against the specific bequest, particularly when ademption by extinction is in issue. "The courts normally believe that the testator wants a gift to be effective and if it is classified as specific the subsequent sale of the stock would adeem the gift. However, a specific gift is normally more beneficial to the legatee if a problem of accretion, interest, abatement or exoneration is present. In such instances the presumption tends to yield more readily when the court is satisfied that the legatee of the stock is a more natural recipient of preferential treatment than the residuary legatee." Paulus, Special and General Legacies of Securities—Whither Testator's Intent, 43 Iowa Law Review 467 (1958).

The ademption factor, which is probably the most compelling one in favor of the general legacy presumption, is absent in our case. The testatrix did not sell the shares, and the appellant does not contend that she intended that the stock split should result in an ademption of the bequest to Alford. In fact, the appellant transferred to appellee, prior to the filing of this suit, the 69 shares expressly bequeathed to appellee in the will.

Putting aside for the moment the discrepancy of one in the number of shares involved (69 bequeathed—68 owned), we look to the alternatives which were presented in the trial court. If Alford should prevail, his interest in Eastman Kodak would be the same as his testatrix had before the stock split, because, as Justice Garwood pointed out in a concurring opinion in Bergin v. Bergin, 159 Tex. 83, 315 S.W. 2d 943 (Tex.1958), a stock split leaves the stockholder exactly where he was before, except that his interest is expressed in terms of a larger number of shares. On the other hand, if O'Neill should prevail, Alford would receive approximately one-half of the interest Mrs. Marshall had in Eastman Kodak when she executed the will (plus approximately one-eighth of the new shares, which he would receive as one of the residuary beneficiaries). Can we say from an examination of her will that she intended that such bequest be thus sharply decreased by unilateral action of the company six months before her death?

Mrs. Marshall's will was carefully drawn. In it she bequeathed "Such shares of Class B stock of The Daily Press . . . as I may own at the time of my death . . .," "All my shares of General Motors . . .," and "One-half of my shares of A. T. & T. . . ." (to each of two devisees), but the 27 other bequests of shares were made by number of shares without use of a possessive pronoun.

It is significant that the testatrix bequeathed to Alford all of the Eastman Kodak shares that she owned (and, apparently by mistake, even one more).

"The quantity of stock owned by the testator at the time the will is executed has great evidentiary value in determining the nature of the gift. If the testator does not own sufficient stock to satisfy the bequest, he apparently is thinking of stock as money and intends to make a pecuniary gift. However, the description may be faulty, the testator may be mistaken as to his holdings, or he may plan to buy more stock. If the stock that he gives coincides with the number of shares he owns at execution, the testator probably wants to give the specific stock he holds to the legatee. This assumption is particularly strong if the bequest describes an odd lot or fractional shares.

". . . .

"The possible dilution of a bequest if it is classified as pecuniary [or general] has impelled the courts to find reasons for rebutting the presumption favoring the general legacy when the shares given have been reduced in value by a stock split. Unlike cash dividends or interest accruing during administration, stock splits raise a problem of substantial magnitude, and the preference for general gifts is not permitted to create great

hardship and operate in a manner clearly contrary to the intent of the testator." Paulus, Special and General Legacies of Securities, supra.

We regard as very important the method in which the testatrix treated her residuary estate. After devising to named relatives a number of specific items of jewelry, silverware, furniture, etc., plus one bequest of her shares of stock in a newspaper, she bequeathed certain shares of stock to eight relatives (some of which bequests we have previously noticed) then provided:

"FIFTH: If at the time of my death I still own the dwelling house and lot at 5713 Overlea Road, Sumner, Montgomery County, Maryland, then the same shall be sold, the Executor or Executrix hereinafter named being so expressly authorized, and the proceeds derived from such sale, and also the rest and residue of my estate after payment of debts, taxes, and administration expenses, shall be divided equally among my sister, Mary Louis Brubaker, and my niece, Alice Whitelock, and my nephew, Harley Brubaker, and my niece, Marie Hamilton, and my nephew, Kenneth R. Alford, and my niece, Kathleen Conley, and my niece, Elizabeth O'Neill, and my niece, Marceille Levy, but if any one of them has predeceased me, . . ."

These residuary legatees are the same eight relatives who had previously been designated to receive certain share of corporate stocks, thus making it clear that she differentiated between the general bequests to these eight relatives as residuary legatees and the bequests to them of stated numbers of shares of stock. If she had not intended to give these eight devisees the shares which she then owned, she need not have designated the number of shares of specified stocks each was to receive but could have merely named the eight relatives as residuary legatees, bequeathed all the shares to them and specified the percentage of the market value of the shares each was to receive. See Shriners Hospitals for Crippled Children v. Emrie, 347 S.W.2d 198 at 202 (Mo.Sup.Ct.1961) and cases cited.

Under facts similar to those in our case the Ohio Court of Appeals in the case of In re Estate of Kirkwood, 6 Ohio App.2d 146, 216 N.E.2d 895 (1966), noting the absence of an ademption problem, reviewed decisions from courts in a number of states. In several of the cases cited it was held unnecessary to categorize the bequest of shares as specific or general, the courts noting that in stock split cases the testator's intention has almost always been found to be that the additional shares go to the designated beneficiary, not to the residuary legatee. The Ohio court concluded that the majority of cases, notwithstanding the various lines of reasoning used in arriving at a conclusion, are in accord with the salutary rule set down in 7 A.L.R.2d 281:

"The rule is definitely established, at least in the United States, that a split-up, or reduction of the par value, of shares of stock which were the subject of a bequest does not result in an ademption of the bequest, unless a contrary intention on the part of the testator appears, the split-up not amounting to an extinguishment of the existence of the subject of the gift, and, so the legatee being entitled to the increased number of shares which replaced those bequeathed."

■ We consider that the stock split resulted in a change of form of the bequest rather than one of substance, and we cannot say that the trial court erred in apparently concluding from the evidence that Mrs. Marshall intended that the split shares should go to the appellee.

Affirmed.