Jean OPPERMAN, Appellant,

v.

Mary Lee ANDERSON, Margaret D. Applewhite, Katherine Garza Castillon, and Mary Hensley, Appellees.

No. 04–88–00583–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 6, 1989.

Rehearing Denied Jan. 12, 1990.

Louis A. Joseph, R. Robert Willman, Jr., San Antonio, for appellant.

Ronald C. Bird, Bird & Noll, Per A. Hardy, Law Office of Per A. Hardy, San Antonio, for appellees.

Before CADENA, C.J., and CHAPA and BIERY, JJ.

## OPINION

BIERY, Justice.

Ethel M. Ramchissel died on April 4, 1987. Her will, dated September 26, 1983, was admitted to probate on May 25, 1987. Her estate consisted of, among other things, three separate and distinct sums of cash held in different accounts:

(a) $4,550.00 (Houston Natural Gas proceeds from shares converted to cash after the death of Ethel Ramchissel)

(b) $6,863.76 (Proceeds from sale before the death of Ethel Ramchissel of Pabst Brewing Co. stock)

(c) $49,131.25 (Houston Natural Gas proceeds from shares converted to cash before the death of Ethel Ramchissel)

The probate court was asked to declare whether these sums were to be distributed pursuant to the paragraphs of the will bequeathing the stock from which the sums originated or whether they were specific bequests which, because of ademption, were to pass pursuant to the residuary clause of the will.

Ademption is the doctrine by which a specific bequest becomes inoperative because of the disappearance of its subject matter from a testator's estate during his lifetime. *Rogers v. Carter*, 385 S.W.2d 563, 565 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.). A specific bequest is one comprised of specific articles of the testator's estate distinguished from all others of the same kind. *Houston Land & Trust Co. v. Campbell*, 105 S.W.2d 430, 433 (Tex. Civ.App.—El Paso 1937, writ ref'd). Because ademption applies only to specific bequests, courts must make a preliminary determination of whether a bequest is specific or general. *O'Neill v. Alford*, 485 S.W.2d 935, 938 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ).

The probate court found that there had not been an ademption, that the specific bequests of stock mentioned in the will were directly traceable to the sums of cash and, therefore, that the sums of cash should be distributed according to the specific bequest paragraphs of the will. We affirm that part of the judgment of the probate court concerning the Houston Natural Gas shares converted to cash after the death of Ethel Ramchissel; we reverse and render the remainder of the judgment, and hold that the proceeds of the Pabst Brewing Co. stock and the proceeds of the Houston Natural Gas stock converted to cash before the death of Ethel Ramchissel pass pursuant to the residuary clause of the will because of ademption.

The pertinent portion of the will reads as follows:

A. To MARY LEE ANDERSON, if she shall survive me, one-half of the stock (if any) in the Pabst Brewing Co. or its successor (whether by change of name, consolidation or merger) owned by me at my death, together with all dividends, rights and benefits declared thereon at the time of my death, and all rights and benefits thereof.

B. I bequeath and devise all of the stock (if any) which I may own in Southdown, Inc. and one-half of the stock (if any) which I may own in the Pabst Brewing Co., or their successors (whether by change of name, consolidation or merger), if owned by me at the time of my death, together with all dividends, rights and benefits hereon at the time of my death, and all rights and benefits thereon at the time of my death, and all rights and benefits thereof, to JEAN OPPERMAN, HARRIETT TRAINER and FAY HAMPTON, in equal shares, or if one or more of them shall not survive me, the whole thereof to such survivors or survivor.

C. I bequeath and devise all the stock (if any) which I may own in the Houston Natural Gas Corporation, or its successor (whether by change of name, consolidation or merger), if owned by me at the time of my death, together with all dividends, rights and benefits declared thereon at the time of my death, and all rights and benefits thereof, to ETHEL BAKER, JEWEL CHATFIELD, MARY LEE ANDERSON, KATHERINE GARZA CASTILLON, MARGARET D. APPLEWHITE and MARY HENSLEY, in equal shares, or if one or more them shall not

survive me, the whole thereof to such survivors or survivor.

D. All the rest, residue and remainder of the property which I may own at the time of my death, real, personal and mixed, tangible and intangible, of whatsoever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this will, including all lapsed legacies and devices, I bequeath and devise to ETHEL BAKER. If the said ETHEL BAKER shall not survive me, then I bequeath and devise the said property to BOYSVILLE, INC. (P's Ex. S–A).

The parties stipulated that, on or before July, 1985, in response to an offer to purchase by G. Hielman Brewing Company, all of the Pabst Brewing Company stock was sold. The proceeds of the sale were placed in a separate account at the Texas Commerce Bank. No other funds have been placed in that account.

In connection with the Houston Natural Gas shares, it was stipulated by the parties that, on or before July, 1985, all but sixty-five shares of the Houston Natural Gas Corporation owned by Ethel M. Ramchissel were converted to $70 per share in cash pursuant to a merger agreement with Internorth, Inc. The proceeds were placed in a separate account[1] at Texas Commerce Bank. No other funds were placed in that account and it was further stipulated that Ethel Ramchissel used all of the interest from this account and a portion of the principal from this account prior to her death.

After Ethel Ramchissel's death, the remaining sixty-five shares of Houston Natural Gas Corporation were redeemed for cash pursuant to the merger agreement at $70 per share and the proceeds were placed in a separate account at Texas Commerce Bank and remain undistributed.

■ Absent a contrary intention expressed in the will, the alienation or disappearance of the subject matter of a specific bequest from the testator's estate adeems

1. The record reflects that Ms. Ramchissel maintained eight different bank accounts at the time

the devise or bequest. *Shriners Hospital for Crippled Children v. Stahl,* 610 S.W.2d 147, 150 (Tex.1980). The intention of the testator must be ascertained at the time the will was executed and from the four corners of the will. *Rogers v. Carter,* 385 S.W.2d 563, 567 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.). The primary inquiry in construing a will is to determine the intent of the testator. *Gee v. Read,* 606 S.W.2d 677, 680 (Tex.1980).

None of the parties claim the language of the will to be ambiguous; therefore, we are required to look only within the four corners of the will and cannot consider subsequent facts such as the disposition of the cash proceeds from the sale of the shares of stock in question.

To ascertain whether a bequest is general or specific, a court must resort to terms and conditions of the will evidencing the testator's intent. *Rogers,* 385 S.W.2d at 567. A testator's use of the first person in describing stock has resulted in the stock being held a specific bequest, as in "all my shares of X Corp. stock" or "all of the shares of X Corp. stock which I own." *O'Neill v. Alford,* 485 S.W.2d 935, 939 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). We conclude that Ms. Ramchissel as testatrix clearly intended that the gifts of stock at issue be specific bequests subject to ademption. As evidence of the testatrix' intent, we are presented with language in her will similar to that relied upon in O'Neill. Ms. Ramchissel carefully worded her will to make the bequests of stock operative only in the event that the shares were on hand at her death. *See O'Neill* at 939. She stated that she wished to bequeath Houston Natural Gas Co. stock only "if owned by me at the time of my death." Her bequest of Pabst stock was limited to "the stock owned by me at my death." Both bequests were qualified by the parenthetical phrase "if any", as in "the stock (if any) ... owned by me at my death."

of her death.

■ A general bequest is found if a testator makes a gift which he intends to be satisfied out of his general assets rather than out of any specific fund or property. *Hurt v. Smith*, 744 S.W.2d 1, 4 (Tex.1987). One Texas case suggests that a testamentary gift of stock, when made without use of a first person possessive pronoun (as in "100 shares of X Corp. stock" as opposed to "my 100 shares of X Corp. stock") is a general bequest of the value of the shares of stock. *O'Neill v. Alford*, 485 S.W.2d 935, 939 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). This is because there is a strong presumption in favor of general legacies where stock bequests are concerned, particularly when ademption by extinction is at issue. *Id.* at 938–939. Thus, if the gifts of stock which were converted to cash during testatrix Ramchissel's lifetime could be construed under any rationale as general bequests, the named legatee might be entitled at testatrix' death to their value. Such is not the case here.

We find that ademption occurred when specific shares of the stock described above were sold prior to the testatrix' death. Because application of the ademption doctrine controls the disposition of this case, we find the probate court's determination that the specific bequests in the will were directly traceable to sums of cash to be immaterial.

Appellees rely on *Guy v. Crill*, in which it was held that an identical provision in a will expressed testator's intent to include all rights and benefits flowing from ownership of stock and any change whether of substance or form is immaterial. 654 S.W.2d 813, 816 (Tex.App.—Dallas 1983, no writ). The facts, however, are distinguishable because the stock in *Guy v. Crill* continued to be stock, albeit in a different form because of a corporate reorganization. *See Id.* In the instant case, the stock ceased to be stock and became cash.

Appellees also rely on *Bates v. Fuller* in which the proceeds from the sale of a house were held to be an identifiable part of the estate and traceable at the time of death. 663 S.W.2d 512, 516 (Tex.App.—Tyler 1983, no writ). Again, however, the facts are distinguishable because the testa-trix in *Bates* specifically referred to "my house or the *proceeds*" in the will. *Id.* at 514.

Appellees further interpret "rights and benefits" to include cash proceeds from the sale of shares. We cannot agree. "Rights and benefits" would include such things as voting rights and dividends.

We hold that the Pabst Brewing proceeds in the sum of $6,863.76 and the Houston Natural Gas proceeds in the amount of $49,131.25 were adeemed and, therefore, render judgment that those amounts pass under the residuary clause of the will. We affirm the probate court's holding that the proceeds from the shares of the Houston Natural Gas which were converted to cash in the amount of $4,550 after the death of Ethel M. Ramchissel were not adeemed and pass pursuant to the specific bequest provisions of the will.

■ In her only other point of error, appellant complains that the trial court erred by creating an improper and unconscionable new duty on an independent executor to trace, account for and characterize each specific thing of value from the date of the will's execution to the date of the testator's death. The record does not reflect that the appellant raised this issue before the trial court; therefore, it was waived. *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex.1986).

The judgment of the trial court regarding the $4,550 Houston Natural Gas proceeds is affirmed. We reverse the remainder of the trial court judgment and render judgment that the $6,863.76 Pabst Brewing proceeds and the $49,131.25 Houston Natural Gas proceeds pass pursuant to the residuary clause of the will.