Alton POPE, Eunice Pope and James
P. Parker, M.D., Relators,

v.

The Honorable Mark DAVIDSON, Judge
of the 11th District Court, Harris
County, Texas, Respondent.

No. B14–92–01247–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 18, 1993.

L.T. Bradt, Joe Alfred Izen, Jr., Houston, for relators.

Gordon A. Holloway, John R. Strawn, Jr., Richard T. Fass, Houston, for respondent.

Before MURPHY, SEARS and DRAUGHN, JJ

## OPINION

MURPHY, Justice.

In this mandamus proceeding, Relators, Alton Pope, Eunice Pope and James P. Parker, M.D., request this court to direct the Honorable Mark Davidson, Judge of the 11th District Court of Harris County, to set aside his order of December 18, 1989 limiting Dr. Parker's expert testimony for the Popes at trial and requiring Dr. Parker to perform indigent medical service. In addition, by a supplemental petition, Relators request this court to direct Respondent to set aside his order limiting prejudgment interest. We conditionally grant the writ as to the indigent medical care requirement, but deny the writ as to all other requests.

The underlying case is a medical malpractice action brought on January 31, 1986 by Alton Pope and his wife, Eunice Pope (the Popes) against the Real Parties in Interest, Leon Bloom, M.D. and Z.K. Dhanahi, M.D.[1] Dr. Dhanahi submitted Interrogatories and Requests for Production to the Popes on March 18, 1986, seeking, among other information, discovery of Mr. Pope's medical treatment and the names and opinions of testifying expert witnesses. Similar Interrogatories and Requests were propounded by Dr. Bloom on April 14, 1988.

On July 12, 1989, a Docket Control Order was entered requiring the Popes to designate expert witnesses by September 15, 1989, and setting the case for trial on December 18, 1989. The Popes failed to designate experts, and by agreement, an amended Docket Control Order was entered on September 18, 1989. The new order gave the Popes until October 2, 1989 to designate experts, imposed a discovery deadline of December 1, 1989, and set the case for trial on January 2, 1990.

The Popes filed their designation of experts on October 4, 1989. Dr. James P. Parker, M.D., also a Relator herein, was named as a testifying expert. Because the designation was incomplete, filed late, and the Popes had not supplemented their discovery responses supplying their expert witnesses' opinions, the Real Parties each filed a Motion for Protection. Respondent ordered the Popes to provide the Real Parties with reports from all designated experts by October 20, 1990.

The Popes provided the Real Parties with a copy of Dr. Parker's report dated October 20, 1989. On November 27, 1989, the day before Dr. Parker's scheduled deposition, the Popes submitted the "First Amended Opinion of James P. Parker, M.D." On November 30, 1989, the Popes supplemented their answers to interrogatories to reflect additional medical treatment by other physicians and an examination by Dr. Parker. After reviewing the amended report and deposing Dr. Parker, the Real Parties again filed a Motion for Protection. Among the numerous discovery abuses alleged to have been committed by Relators, the Real Parties complained of the following:

1. Dr. Parker's amended report contained numerous new allegations and opinions not supported by the pleadings.

2. In his amended report and deposition, Dr. Parker referred to other treating physicians and surgical procedures that had not been disclosed in response to previous discovery requests.

1. Maurice Chait, M.D. and the Spring Branch Memorial Hospital were also originally named as defendants in this action, but are no longer parties to this suit.

3. Dr. Parker admitted that he did not agree with portions of the affidavit prepared by the Pope's attorneys in response to a motion for summary judgment, even though he had signed it and sworn to its truth.

4. On three separate occasions, Dr. Parker failed to bring subpoenaed documents to his deposition.

5. Neither Dr. Parker nor the Popes provided the Real Parties with all photographs requested in various discovery proceedings.

6. Dr. Parker produced approximately 80 exhibits, the majority of which were never previously disclosed, at his deposition on November 28 and 29, 1989.

7. Dr. Parker unilaterally terminated his deposition on November 29, 1989, rendering it impossible for the Real Parties to complete discovery prior to the December 1, 1989 deadline.

The Real Parties' motion asked that the Popes be prohibited from presenting evidence of liability, proximate cause or damages pursuant to TEX.R.CIV.P. 215(3), (5). They also asked, alternatively, that the Popes be ordered to produce all health care records requested but not previously produced, and that the Real Parties be granted additional time for discovery and designation of their experts.

By order dated December 13, 1989, in response to the Real Parties' motion, Respondent struck Dr. Parker as an expert witness. The Popes filed a Motion for Rehearing, and Respondent set aside his earlier order. On December 18, 1989, Respondent ordered that Dr. Parker could testify only as to those matters set forth in his original opinion on the condition that he perform fifty hours of indigent medical care, "with Dr. Parker's agreement to this condition to be in writing, signed by him and submitted to the Court." [2]

Dr. Parker did not agree to perform the indigent medical care. On January 2, 1990, the scheduled trial date, the suit was dismissed by Judge Arthur Lesher for reasons not apparent from the record. On January 16, 1990, Judge Lesher set aside the order of dismissal and reinstated the action. The case was tried to a jury beginning June 18, 1990, and Dr. Parker was allowed to testify as to matters in his original opinion, despite his failure to perform the indigent medical care. The jury reached a verdict favorable to the Popes and against the Real Parties, but a new trial was granted. A new Docket Control Order was issued, giving the Popes until October 16, 1992 to designate experts and imposing a discovery deadline of December 31, 1992.

Following the entry of the new Docket Control Order, the Popes asked Respondent to reconsider the December 18, 1989 order and allow Dr. Parker to testify fully at the new trial. On October 19, 1992, Respondent ruled that his previous order "limiting the scope of Dr. James P. Parker's testimony to those matters set forth in his first report [is] still in effect, except that Dr. James P. Parker shall be allowed to testify regarding Mr. Pope's hospitalizations of 8/31/91, 10/21/91 and 12/19/91."

To date, Dr. Parker has never complied with the order requiring indigent medical care. Even though he was allowed to testify as to his initial report at the first trial, the Popes now bring this mandamus action seeking not only to allow Dr. Parker to testify about his amended report, but also to assure that he will be permitted to testify without having performed the indigent medical care ordered by Respondent.

The rules of civil procedure allow the trial court to impose sanctions for failure to comply with proper discovery requests or for abuse of the discovery process. *See*

---

**2.** The pertinent portions of Respondent's order are as follows:

Plaintiffs' motion to rehear Defendant's Motion for Protection is granted in part, as follows: the order striking James P. Parker, M.D., as Plaintiffs' expert is set aside and he shall be allowed to testify only to those matters set forth in his original opinion filed with this Court and not any matters supplemented in his First Amended Opinion; on the condi-

tion that by 5:00 p.m. on December 18, 1989, Plaintiffs shall notify the Defendants of the name and address of the neurologist who examined Alton Pope in April of 1989; and further on the condition that Dr. Parker shall perform fifty (50) hours of indigent medical care on or before February 18, 1990, with Dr. Parker's agreement to this condition to be in writing, signed by him and submitted to the Court.

TEX.R.CIV.P. 215(2)(b), 215(3).[3] In addition, Rule 215(5) provides as follows:

**Failure to Respond to or Supplement Discovery.** A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown on the record.

TEX.R.CIV.P. 215(5).

Relators refer this court to a recent decision from our Supreme Court discussing the exclusion of evidence and/or witnesses under rule 215(5). In *H.B. Zachry Company v. Gonzalez,* the Supreme Court conditionally granted writ of mandamus to permit supplementation of answers to interrogatories after a trial setting was removed to a date more than thirty days from the date of the trial from which the witnesses were excluded. 847 S.W.2d 246 (Tex.1993). The court held that the automatic exclusion in rule 215(5) does not continue beyond the resetting of the trial date where the date set is more than thirty days from the date of the original trial date. *Id.* For the exclusion to remain beyond such a reset, the trial court's ruling enforcing the exclusion must be based upon some *other* sanctionable conduct of the party. *Id.* In *Zachry,* the court's ruling was based *solely* upon the automatic exclusion of evidence under rule 215(5). *Id.* In this case, there is a long list of possibly sanctionable conduct from which the Respondent could have chosen to exclude Dr. Parker's testimony. The Popes argue that Dr. Parker's testimony should not be excluded based on

Rule 215(5) because their supplementation was made more than thirty days before trial. We have no record of a hearing on sanctions, but it appears that Respondent's order was not based solely on Rule 215(5), but was made as a sanction for discovery abuse under Rule 215(3). Therefore, Respondent's exclusion order may survive the resetting of the case.

A writ of mandamus is appropriate only to correct a clear abuse of discretion committed by the trial court when there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985).

An appellate remedy is not inadequate merely because it involves more expense or delay than a writ of mandamus. *Walker v. Packer,* 827 S.W.2d at 842. However, there are many situations where a party will not have an adequate remedy from a clearly erroneous ruling. In discovery disputes, appeal is not adequate if, for example: (1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense at trial is severely compromised; or (3) the missing discovery cannot be made a part of the appellate record. *Id.* at 843.

The Popes allege that Respondent's order amounts to a "death penalty" sanction and rely on the standards imposed by *Transamerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991) and *Braden v. Downey,* 811 S.W.2d 922 (Tex.1991). Discovery sanctions must be "just." TEX. R.CIV.P. 215(2)(b); *Transamerican,* 811 S.W.2d at 917. Two factors determine the

---

**3.** Rule 215(2)(b) lists the sanctions, among others, which may be ordered against a party who fails to comply with proper discovery requests or orders. Paragraph (2)(b)(4) provides that the court may make:

An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

TEX.R.CIV.P. 215(2)(b)(4).
Rule 215(3) provides for sanctions against a party abusing the discovery process in seeking, making or resisting discovery. The court may impose appropriate sanctions authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2(b) above.

limits of the trial court's discretion for sanctions to be just: first, a direct relationship between the offensive conduct and the sanction imposed must exist; and second, the sanction imposed must not be excessive. In other words, "the punishment should fit the crime." *Id.*

Sanctions which are so severe as to preclude a presentation of the merits of a case should not be assessed absent a party's flagrant bad faith or counsel's disregard for the rules of discovery. *Id.* at 918. Severe sanctions should be reserved for situations where a party has abused the rules of procedure to such an extent that the party's position is presumed to be without merit. *Braden*, 811 S.W.2d at 929.

We find that a sanction limiting Dr. Parker's testimony to his opinion in his first report is not so severe as to preclude a presentation of the merits of the Popes' case. Dr. Parker testified in a limited fashion in the earlier trial and the jury still reached a verdict favorable to the Popes. In addition, we find that it is premature to complain that Dr. Parker *may* not be allowed to testify at trial. Respondent's order amounts to a pretrial suppression order and Dr. Parker may be allowed to testify fully or at least as to his original report. The Popes' complaint is an evidentiary objection that can and should be reurged at trial and then reviewed in the regular course of an appeal. *See Southwestern Bell Telephone v. Sanderson*, 810 S.W.2d 485, 487 (Tex.App.—Beaumont 1991, orig. proceeding).

The Popes have failed to show that they have no adequate remedy by appeal. If Dr. Parker's testimony is excluded, in part or in whole, any excluded evidence is still available to the Popes and may be presented for appellate review by bill of exception. *See Forscan Corp. v. Touchy*, 743 S.W.2d 722, 724 (Tex.App.—Houston [14th Dist.] 1987, orig. proceeding).

Because we find that the Popes have an adequate remedy by appeal, we deny the writ of mandamus as to the limit imposed on the scope of Dr. Parker's testimony, but express no opinion on the appropriateness of that sanction. However, we conditionally grant the writ as to the por-

tion of Respondent's order ordering Dr. Parker to perform fifty hours of indigent medical care. First, we refer to a similar sanction discussed in *Braden v. Downey*, 811 S.W.2d 922 (Tex.1991). In that case, Braden's attorney, E.M. Schulze, Jr., was ordered to perform ten hours of community service at Child Protective Services of Harris County as a discovery sanction. The supreme court directed the trial judge to modify his order to defer the performance of community service until final judgment was rendered and Braden had an opportunity to appeal. *Id.* at 930. Subsequently, on appeal, this court held that, because it was based on the attorney's conduct, a community service sanction was within the court's discretion, not "unjust," and not in violation of the thirteenth amendment. *Braden v. South Main Bank*, 837 S.W.2d 733, 743 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

Because an order imposing community service, or in this case, indigent medical care, must be made part of a final, appealable order, we would direct Respondent to modify his order accordingly if Dr. Parker were a party or a party's attorney. However, we note that Rule 215 applies to sanctions to be imposed upon *"the disobedient party"* or *"the attorney advising him."* TEX.R.CIV.P. 215(2)(b). In our opinion, Rules 215(2)(b) and 215(3) do not contemplate sanctions against nonparties. As evidence of this intent, the rules provide separately for sanctions against nonparties. Rule 215(2)(c) provides that if a nonparty fails to comply with a discovery order, that failure may be treated as contempt of court. TEX.R.CIV.P. 215(2)(c).

We conclude that an order requiring performance of indigent medical care by a nonparty witness is not an appropriate sanction under Rule 215. In addition, the record does not reflect that Dr. Parker was afforded notice of the hearing on the imposition of sanctions; thus, any order imposing sanctions on him is violative of due process. *See Braden v. South Main Bank*, 837 S.W.2d at 738. Any disobedience by Dr. Parker of the trial court's orders should be punished by contempt,

following proper notice and hearing. *See Texas Attorney General's Office v. Adams*, 793 S.W.2d 771, 775 (Tex.App.— Fort Worth 1990, orig. proceeding).

On December 21, 1992, Respondent signed an order continuing the trial setting and abating prejudgment interest from December 21, 1992 to date of trial. Relators also request that we direct Respondent to set aside this order limiting prejudgment interest. We find that this request is premature. *If* the Popes are successful in obtaining a judgment, the issue of prejudgment interest may be addressed on appeal. The cost or delay of having to go through trial and the appellate process does not make appeal an inadequate remedy. *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex.1991). Mandamus is inappropriate, and we deny the writ. We further find that, by their actions, Respondent and Real Parties are not in contempt of this court's order of December 3, 1992, which stayed proceedings in the trial court.

In conclusion, we conditionally grant Relator's writ of mandamus in part and direct Respondent to modify that portion of his order of December 18, 1989, requiring Dr. Parker to perform indigent medical care. We are confident that Judge Davidson will comply with the order of this court. Therefore, the writ will not issue unless Judge Davidson fails to modify his order, deleting the requirement for performance of indigent care. In all other respects, the writ of mandamus is denied.