



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DON H. HANVEY, Appellant

No. 05-95-00390-CV                V.

JEAN RAYMOND BOULLE, MARIE
JOSEPH FRANCO BOULLE, AND
THE BOULLE GROUP, Appellees

Appeal from the 101st Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
92-04481-E).
Opinion delivered by Justice Kinkeade,
Justices James and Wright participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's judgment. It is **ORDERED** that appellees Jean Raymond Boulle, Marie Joseph Franco Boulle, and The Boulle Group recover their costs of this appeal from appellant Don H. Hanvey and from Old Republic Surety Company as surety on appellant's appeal bond.

Judgment entered August 7, 1996.

_____
ED KINKEADE
JUSTICE

Affirmed and Opinion Filed August 7, 1996



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-95-00390-CV

### DON H. HANVEY, Appellant

### V.

### JEAN RAYMOND BOULLE, MARIE JOSEPH FRANCO BOULLE, AND THE BOULLE GROUP, Appellees

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 92-04481-E**

## O P I N I O N

Before Justices Kinkeade, James, and Wright
Opinion By Justice Kinkeade

Don H. Hanvey individually sued Jean Raymond Boulle (Jean Boulle), Marie Joseph Franco Boulle (Franco Boulle), and The Boulle Group because they failed to share a profitable business opportunity with Hanvey's corporations. In a summary judgment, the trial court ordered Hanvey take nothing. In seven points of error, Hanvey argues the trial court erred because: (1) genuine issues of material fact precluded summary judgment; (2)

he properly objected to appellees' summary judgment evidence; (3) appellees did not prove their affirmative defenses; (4) he presented competent summary judgment evidence showing fraud; (5) his causes of action against Franco Boulle were valid; (6) he had not released his individual claims; and (7) he filed timely his amended petition. We conclude the causes of action, if any, do not belong to Hanvey individually and the trial court did not abuse its discretion in striking Hanvey's amended petition. We accordingly affirm. Appellees filed one cross-point of error that we deny as moot.

## BACKGROUND

In his petition, Don H. Hanvey alleged in 1980, he and two of his companies set up International Diamond Investors Consultancy, Inc. (IDIC) for the purpose of bringing Jean Raymond Boulle (Jean Boulle), Denny Boulle, and Max Boulle to the United States to conduct business in the diamond market worldwide. Initially Jean, Denny, and Max Boulle worked for IDIC, but later they and Hanvey formed European Diamond Importers and Cutters, Inc. (EDIC), which was later replaced by Boulle, Inc. Still later, in 1986, they formed a corporation known as EXDIAM. EXDIAM's purpose was to invest in diamond mining exploration.

At an unspecified time, Jean Boulle, Marie Joseph Franco Boulle (Franco Boulle), and The Boulle Group entered a joint venture agreement and partnership with Sunshine Mining Company (Sunshine) for the purpose of producing and developing diamonds and diamond mines in Sierra Leone, Africa (the Sierra Leone project). Hanvey's petition does not specify the nature or composition of The Boulle Group. We refer to Jean Boulle,

-2-

Franco Boulle, and The Boulle Group, as "the Boulles." The Boulles did not tell Hanvey about the Sierra Leone project.

In 1990, Sunshine sued the Boulles, and the Boulles countersued. In January 1992, the trial court signed a judgment awarding the Boulles a judgment in excess of $24 million. On April 2, 1992, Sunshine and the Boulles entered an agreement in which Sunshine assigned its interest in another joint venture to the Boulles and agreed to pay the Boulles a total of $5 million.

Coincidentally, Hanvey first learned of the Sierra Leone project in April 1992. On April 6, 1992, he filed suit against the Boulles in his individual capacity. Hanvey alleged the Boulles should have shared the Sierra Leone project with his corporations. He asserted causes of action for (1) fraud, (2) common law negligence, (3) breach of the duty of good faith and fair dealing, (4) breach of fiduciary duty, (5) unjust enrichment, (6) violation of the corporate duty doctrine, and (7) civil conspiracy. He also sought a permanent injunction and attorney's fees.

In the trial court, Franco Boulle proceeded *pro se*. Jean Boulle and The Boulle Group were represented by the same counsel. Franco Boulle's motions mirrored the motions of Jean Boulle and The Boulle Group. For purposes of this opinion, when referring to "the Boulles' motion," we are referring to both (a) Jean Boulle and The Boulle Group's motion and (b) Franco Boulle's motion. When referring to the date of a motion, we are referring to the date of Jean Boulle and The Boulle Group's motion. Franco Boulle did not necessarily file his motions on the same date as Jean Boulle and The Boulle Group, but he

normally filed his motion within a few days thereof.

On September 21, 1994, the Boulles filed a motion to dismiss and argued Hanvey did not have standing to maintain the suit individually. On September 22, 1994, the Boulles filed a motion for summary judgment. The record shows the trial court heard the Boulles' motion to dismiss on September 28, 1994, and deferred its ruling. The parties do not dispute the trial court set the Boulles' motion for summary judgment for October 14, 1994.

On October 7, 1994, Hanvey filed his amended petition. Hanvey brought the suit individually and, in the alternative, as a shareholder derivative suit on behalf of EXDIAM and EDIC. For Hanvey individually, Hanvey alleged causes of action for (1) breach of contract, (2) fraud, (3) common law negligence, (4) breach of the duty of good faith and fair dealing, (5) breach of fiduciary duty, (6) unjust enrichment, and (7) civil conspiracy. In his derivative suits on behalf of EXDIAM and EDIC, he alleged causes of action for (1) breach of fiduciary duty, (2) violation of the corporate opportunity doctrine, (3) breach of the duty of good faith and fair dealing, (4) unjust enrichment, and (5) civil conspiracy.

On October 13, 1994, the Boulles filed a motion to strike Hanvey's amended petition. They alleged Hanvey's amended petition was untimely and complained Hanvey had not first obtained leave. They also argued the amended petition operated as a surprise and was prejudicial. On October 14, 1994, Hanvey filed a motion for leave to file his amended petition. On December 15, 1994, the trial judge signed an order granting the Boulles' motion to strike and ordered Hanvey's amended petition stricken, and on January 24, 1995, the trial judge signed an order granting the Boulles' motion for summary judgment and

-4-

ordered Hanvey take nothing.

## HANVEY'S AMENDED PETITION

Since Hanvey's seventh point of error defines the scope of his pleadings, we address it first. In point of error seven, Hanvey argues the trial court erred in striking his amended petition because he filed it timely. TEX. R. CIV. P. 63. Hanvey argues rule 63 prohibits the trial court from striking any timely amended pleading.

Parties may amend their pleadings at such time as not to operate as a surprise to the opposite party. TEX. R. CIV. P. 63. If, however, a party wants to file a pleading within seven days of the date of trial or thereafter, or after such time as designated in a pretrial order under rule 166, the party must first obtain leave. TEX. R. CIV. P. 63. A hearing on a motion for summary judgment is a trial within the meaning of rule 63. *Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988).

The trial court may specify the time within which the parties may file amended pleadings in a pretrial order. TEX. R. CIV. P. 63, 166; *Texas Commerce Bank Reagan v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 78-79 (Tex. App.--Corpus Christi 1993, writ denied). Hanvey's amended petition violated the trial court's written May 12, 1992 and oral August 13, 1993 pretrial orders and was, therefore, untimely. TEX. R. CIV. P. 63, 166; *Texas Commerce Bank Reagan*, 865 S.W.2d at 78-79; *Valdez v. Lyman-Roberts Hosp., Inc.*, 638 S.W.2d 111, 117 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.); *see Susanoil, Inc. v. Continental Oil Co.*, 516 S.W.2d 260, 264 (Tex. Civ. App.--San Antonio 1973, no writ) (oral order); *Dunn v. County of Dallas*, 794 S.W.2d 560, 562 (Tex. App.--Dallas 1990, no writ)

(oral order).

In his post-submission brief, Hanvey argues that when the trial court reset the trial dates, it nullified the pretrial orders. *See H.B. Zachry Co. v. Gonzalez*, 847 S.W.2d 246, 246 (Tex. 1993) (orig. proceeding) (per curiam); *J.G. v. Murray*, 915 S.W.2d 548, 550 (Tex. App.--Corpus Christi 1995, orig. proceeding); *Revco, D.S., Inc. v. Cooper*, 873 S.W.2d 391, 395-96 (Tex. App.--El Paso 1994, orig. proceeding); *Pope v. Davidson*, 849 S.W.2d 916, 917-18 (Tex. App.--Houston [14th Dist.] 1993, orig. proceeding). Hanvey does not show he raised this issue in the trial court. Tex. R. App. P. 74(f). Our own review of the record does not show Hanvey ever contested the validity of the trial court's pretrial orders in conjunction with his motion for leave or the Boulles' motion to strike. Hanvey waived this issue by not raising it in the trial court. *McCain v. NME Hosps. Inc.*, 856 S.W.2d 751, 755 (Tex. App.--Dallas 1993, no writ); *Opperman v. Anderson*, 782 S.W.2d 8, 11 (Tex. App.-- San Antonio 1989, writ denied). Hanvey also recognized the validity of the pretrial orders in his March 30, 1994 motion to set them aside. Assuming Hanvey questioned those orders in his March 30, 1994 motion, he never procured a ruling on those objections. Absent a ruling on the motion, Hanvey preserved no error for review. Tex. R. App. P. 52(a); *Dallas County v. Sweitzer*, 881 S.W.2d 757, 770 (Tex. App.--Dallas 1994, writ denied).

On September 28, 1994, the trial court heard the Boulles' motion to dismiss based upon Hanvey's filing his suit individually and not as derivative suits. Hanvey argues that at this hearing the trial judge gave him until October 8, 1994, to file an amended pleading. Hanvey concludes his October 7, 1994 amended petition was timely pursuant to this oral

pretrial order.

After reviewing the entire statement of facts of the September 28, 1994 hearing, we conclude Hanvey misinterprets the trial judge's comments. Although the Boulles filed a motion to dismiss, the trial judge questioned whether procedurally the Boulles should have presented special exceptions instead. The trial court then asked Hanvey's counsel "hypothetically" how he would replead to cure the defects "if" the Boulles filed special exceptions based on the reasons presented in the motion to dismiss and the trial court sustained them and then ordered Hanvey to replead within ten days. The trial judge then declined to rule on the Boulles' motion to dismiss. When Hanvey's counsel thereafter asked specifically whether he had leave to file an amended petition, the trial judge answered that he would rule upon a motion to amend the pleadings when Hanvey filed a motion requesting that relief. We conclude the trial court did not grant Hanvey leave to amend his petition within ten days of September 28, 1994. At most, the trial judge indicated he would entertain a motion for leave.

Hanvey also argues the trial court relied on a local rule of procedure that was inconsistent with the Texas Rules of Civil Procedure. Hanvey maintains that local rules cannot alter the time periods provided by the Texas Rules of Civil Procedure. TEX. R. CIV. P. 3a(2). Nothing in the record shows Hanvey raised this issue in the trial court, and therefore Hanvey waived this argument. *McCain*, 856 S.W.2d at 755; *Opperman*, 782 S.W.2d at 11. Nothing in the record reflects the trial court relied upon any local rule. Hanvey's contention has no merit.

-7-

If a party seeks leave to file an amended pleading after the time specified in a pretrial order, the trial judge shall grant leave unless: (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. TEX. R. APP. P. 63; *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex. 1992) (per curiam); *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex. 1990); *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980); *Texas Commerce Bank Reagan*, 865 S.W.2d at 79. If the trial court concludes the amendment, on its face, is calculated to surprise or would reshape the cause of action, thereby prejudicing the opposing party and unnecessarily delaying the trial, the trial court may refuse the amendment. *See Greenhalgh*, 787 S.W.2d at 940; *Hardin*, 597 S.W.2d at 349. If a party attempts to add new matter about which, by exercising reasonable diligence, the party should have known earlier and should have added in a former pleading, the trial court should deny the amendment. *See Valdez*, 638 S.W.2d at 117. Appellate courts will not disturb the trial court's ruling unless the complaining party on appeal can show a clear abuse of discretion. *Hardin*, 597 S.W.2d at 349-50; *Valdez*, 638 S.W.2d at 117.

The trial court could have concluded that Hanvey failed to exercise reasonable diligence. Hanvey's counsel admitted the reason he had not filed suit on behalf of EXDIAM earlier was because he assumed EXDIAM was no longer active. He also admitted making no effort to verify his assumption. *See Valdez*, 638 S.W.2d at 117.

The trial court could have also concluded Hanvey's amended petition was prejudicial

on its face and constituted a surprise because it added new parties and a new cause of action. Individually, Hanvey added a cause of action for breach of contract. The derivative suits added two new parties, EXDIAM and EDIC.

Hanvey stresses EXDIAM and EDIC were added in the alternative only. Having intervened, for whatever purpose, EXDIAM and EDIC were parties until stricken. TEX. R. CIV. P. 60. The trial court could properly consider them when determining surprise.

Because Hanvey filed his amended petition after more than two years of litigation, ostensibly in response to the Boulles' motion for summary judgment, and only one week before trial, the trial court could have determined Hanvey's amendment was an attempt to reshape the cause of action, would unnecessarily delay the trial, and was, on its face, calculated to prejudice and surprise the Boulles. *See Greenhalgh*, 787 S.W.2d at 940 n.3; *Hardin*, 597 S.W.2d at 349. Hanvey has not shown an abuse of discretion. *Hardin*, 597 S.W.2d at 349-50; *Valdez*, 638 S.W.2d at 117. We overrule Hanvey's seventh point of error. We review his remaining points of error based upon his original petition.

## AFFIRMATIVE DEFENSES

In point of error three, Hanvey argues the trial court erred in granting summary judgment because the Boulles did not carry their burden of proving their affirmative defenses. Under this point of error, Hanvey addresses only whether he lacked standing to sue. The issue is whether the causes of action asserted by Hanvey belonged to him individually or belonged to one of his corporations. The Boulles argued the causes of action, if any, did not belong to Hanvey individually; Hanvey argued they did. We review

the summary judgment evidence.

The summary judgment evidence showed Jean Boulle's alleged promise went to Hanvey's companies, not to Hanvey individually. In response to an interrogatory asking Hanvey to identify all oral and non-oral assurances upon which he based his claims, Hanvey answered Jean Boulle assured him his activities were on behalf of Hanvey's companies. During Hanvey's September 12, 1994 deposition, he denied Jean Boulle's assurances were to him individually. Hanvey said Jean Boulle's assurances went to Hanvey's companies.

Hanvey contends his October 7, 1994 affidavit shows Jean Boulle made his promise to Hanvey individually, thereby creating an issue of material fact. Hanvey's affidavit does not support this contention. It shows Jean Boulle communicated his alleged promise to Hanvey personally. The parties do not dispute Jean Boulle communicated his promise, if any, to Hanvey. The parties dispute the substance of that communication. Hanvey's affidavit is silent on the substance of Jean Boulle's alleged promise. It provides simply: "The agreement and our conversations concerning it, [sic] were specific as to what we both intended that to mean." It proceeds to discuss Hanvey's percentage of ownership in EXDIAM and faults Jean Boulle for not sharing the Sierra Leone project with EXDIAM and EDIC. This discussion is irrelevant if the alleged promise was to Hanvey individually.

In the face of the Boulles' summary judgment evidence showing Hanvey admitting Jean Boulle's assurances, if any, were to Hanvey's companies, not Hanvey individually, Hanvey's affidavit curiously avoids stating Jean Boulle promised all the business opportunities he encountered to Hanvey individually. We note Hanvey filed his affidavit and

-10-

response to the Boulles' motion for summary judgment on October 7, 1994, the same date he filed his amended petition asserting derivative suits on behalf of EXDIAM and EDIC. Hanvey's response assumes his amended petition was his live pleading. If Hanvey admitted Jean Boulle's promise went to EXDIAM and EDIC, Hanvey lost his individual claims. If Hanvey admitted the promise went to himself individually, he lost his derivative suits. Hanvey's affidavit studiously avoids this conflict by never stating to whom Jean Boulle made his alleged promises. His efforts to balance this problem caused him to never rebut the other evidence showing the alleged promises went to Hanvey's companies.

Hanvey's answer to the interrogatory and his answers to deposition questions unequivocally show Jean Boulle's alleged promise went to EXDIAM and possibly other corporations, but not to Hanvey individually. Hanvey's affidavit shows Jean Boulle communicated his alleged promise to Hanvey but does nothing to rebut the Boulles' evidence Jean Boulle's alleged promise went to Hanvey's companies. We conclude the Boulles met their burden of showing there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *see Edlund v. Bounds*, 842 S.W.2d 719, 728-29 (Tex. App.--Dallas 1992, writ denied); *Kaspar v. Thorne*, 755 S.W.2d 151, 154-56 (Tex. App.--Dallas 1988, no writ). We overrule Hanvey's third point of error.

## HANVEY'S REMAINING POINTS OF ERROR

Because we determined, in point of error three, the causes of action, if any, did not belong to Hanvey individually, we overrule Hanvey's remaining points of error as moot.

-11-

## JEAN BOULLE AND THE BOULLE GROUP'S CROSS-POINT OF ERROR

In one cross-point of error, Jean Boulle and The Boulle Group contend the trial court erred in denying their motion to strike Hanvey's response to their motion for summary judgment and Hanvey's affidavit attached thereto. Our disposition of Hanvey's points of error renders this cross-point of error moot.

We affirm the trial court's judgment.

_____
ED KINKEADE
JUSTICE

Do Not Publish
Tex. R. App. P. 90
950390F.U05

-12-