**Dallas HARRIS, Individually and as Independent Executor of The Estate of Beverly Hines Harris, Deceased, Appellant,**

v.

**Libby HINES, Individually and as Executrix of the Estate of Rodney Hines, Deceased, and Bebe Hines Cole, as Trustee for Cy Rickey Hines, Appellees.**

No. 06–03–00076–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 12, 2004.

Decided June 8, 2004.

Sam R. Moseley, Attorney At Law, Marshall, for appellant.

Vincent L. Dulweber, Vincent L. Dulweber, PC, Longview, for Libby Hines, Individually and as Executrix of the Estate of Rodney Hines, Decease.

Bailey C. Moseley, Attorney At Law, Marshall, for Bebe Hines Cole as Trustee for Cy Ricky Hines.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

This case involves construction of the last will and testament of Beverly Hines Harris. The question in this appeal is whether a devise by Beverly of real and personal property was adeemed because she did not own the property at her death. The trial court found it was not adeemed. We reverse and render judgment that the property was adeemed.

*Factual and Procedural Background*

Beverly and Richard N. Cole were partners in a marina, restaurant, and motel called Shady Glade Camp (Shady Glade). Richard was married to Beverly's daughter, Bebe. A dispute arose between Beverly and Richard over the operation of Shady Glade, and a lawsuit ensued. A settlement of the lawsuit resulted in the purchase of Richard's interest in Shady Glade by Beverly's husband, Dallas Harris. Beverly's last will and a "Stipulation of Ownership" between Beverly and Dallas were prepared at the same time the lawsuit was settled. Beverly's will provided for the disposition of Shady Glade as follows:

I will, devise and bequeath all my interest in all that certain real and personal property located near Caddo Lake in northeastern Harrison County, and commonly known as Shady Glade (being the same property described in that certain Stipulation of Ownership executed by Dallas Harris and myself on October 21st, 1994, and recorded under Clerk's File # 10094–H in the Offices of the County Clerk for Harrison County, Texas) together with all additions thereto and substitutions therefor, to my son, Rodney Carroll Hines, and the Trustees of any trust created under this Will for the benefit of my son, Cy Rickey Hines, equally.

I specifically exclude my daughter, Bebe Ann Hines Cole from this bequest due to the difficulties I have previously experienced with her husband, Richard N. Cole, and because I am satisfied that she has adequate means to ensure her future support and well-being. Under no circumstances do I wish Richard N. Cole to have any interest in or control over Shady Glade at any time, now or in the future.

Beverly's will provided for the disposition of all her remaining property in a residuary clause as follows:

If my husband, Dallas Harris, survives me, then I will, devise and bequeath all the rest and residue of my property of every kind and character and wherever situated, to the Trustee hereinafter named, in trust, . . . .

During the life of my husband, Dallas Harris, the Trustee shall pay the net income from the trust to my husband in convenient payments no less often than quarterly. . . .

Upon the death of my husband, the trust shall terminate and the principal of the trust as it is then constituted, and any accumulated and undistributed net income, shall be delivered to and shall vest as follows:

A. One-third (1/3) to my daughter, Bebe Ann Hines Cole;

B. One-third (1/3) to my son, Rodney Carroll Hines; and

B. [sic] One-third (1/3) to the [sic] Rodney Carroll Hines and Bebe Ann

Hines Cole, as Co–Trustees, in trust for the benefit of my son, Cy Rickey Hines, . . . .

The "Stipulation of Ownership" referred to in Beverly's will recited that Beverly and Dallas each purchased a one-half interest in Shady Glade with separate property, and that each owned an undivided one-half interest in Shady Glade, both real and personal property, as their respective separate property. The "Stipulation of Ownership" described with great detail both the real and personal property comprising Shady Glade.

On April 1, 1999, Beverly and Dallas sold their interests in Shady Glade to a third party in exchange for a promissory note of $150,000.00. Beverly died March 29, 2001. She was survived by her husband, Dallas, her daughter, Bebe, and her two sons, Rodney and Cy Rickey. At the time of her death, the promissory note remained owing in the amount of $138,000.00. After Beverly died, her son Rodney also died, leaving his wife, Libby Hines, as executor of his estate.

Dallas, as executor of Beverly's estate, filed a petition in court requesting a declaration that the bequest of the Shady Glade property under Beverly's will was adeemed and could no longer be fulfilled. Libby, as executor of Rodney's estate, filed an answer and counterclaim requesting the trial court to declare that Beverly's devise of Shady Glade also provided for the pro-

ceeds from its sale, and that the promissory note given in exchange for Shady Glade was proceeds of the specific bequest and should not be adeemed. Both parties moved for summary judgment.[1] The trial court found that Beverly's devise of Shady Glade to her two sons was not ambiguous and was not adeemed. The trial court granted to Libby, and to Bebe, as trustee for Cy Rickey, an equal portion of Beverly's remaining one-half interest in the promissory note. The trial court denied Dallas' motion for summary judgment.

*Standard of Review*

The movant for traditional summary judgment must establish that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a disputed material fact issue precluding summary judgment, all admissible evidence favorable to the nonmovant will be taken as true; every reasonable inference must be indulged in favor of the nonmovant, and any doubts resolved in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49. When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex.2002). The reviewing court

---

1. The procedural posture of this case is somewhat unique. The trial court first granted Libby's motion for summary judgment March 4, 2002. Dallas appealed to this Court. It was later discovered Libby did not have an answer on file (and had not filed her counterclaim) at the time her motion for summary judgment was granted. The March 4, 2002, summary judgment also failed to address the codefendant, Bebe, leaving the summary judgment interlocutory. The trial court vacated the March 4, 2002, summary judgment,

and we dismissed the appeal. *See In re Estate of Harris*, No. 06–02–00076–CV (Tex.App.-Texarkana Aug. 27, 2002, no pet.) (not designated for publication). Libby then filed her answer and counterclaim, and both parties re-urged their motions for summary judgment with the trial court. The trial court granted Libby's motion for summary judgment by written order April 16, 2003, which included Bebe in the disposition of the case. The court denied Dallas' motion, and he again appealed to this Court.

should render the judgment the trial court should have rendered. *Id.*

Libby contends the standard of review of a trial court's determination that a will is unambiguous is reviewed under an abuse of discretion standard. *See Nail v. Thompson*, 806 S.W.2d 599, 601–02 (Tex. App.-Fort Worth 1991, no writ). It is uncontroverted, however, that the determination of whether an instrument such as a will is ambiguous is a question of law. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998); *Sammons v. Elder*, 940 S.W.2d 276, 280 (Tex. App.-Waco 1997, writ denied). We review questions of law de novo. *See generally El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex.1999); *Cherokee Water Co. v. Freeman*, 33 S.W.3d 349, 353 (Tex.App.-Texarkana 2000, no pet.) (whether deed is ambiguous is question of law subject to de novo review). Therefore, we will review the trial court's determination of whether the will is ambiguous under a de novo standard of review. In a de novo review, no deference is accorded to the lower court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex.1998).

*Will Construction*

In construing a will, the court must focus on the testator's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex.2000). In so doing, "[t]he intent must be drawn from the will, not the will from the intent." *Id.* at 640. This intent must be ascertained from the language found within the four corners of the will. *Shriner's Hosp. for Crippled Children v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980). Therefore, when the intent of the testator is apparent on the face of the will, extrinsic evidence is not admissible to show a contrary meaning. *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267, 273 (1961). In determining the testator's intent, the court focuses not on what the testator intended to write, but the meaning of the words actually used. *Lang*, 35 S.W.3d at 639. In this light, courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent. *Stahl*, 610 S.W.2d at 151.

If the will is unambiguous, the court should not go beyond the specific terms to ascertain the requisite intent. *Lang*, 35 S.W.3d at 639. If, on the other hand, the meaning of the instrument is uncertain or "reasonably susceptible to more than one meaning," the instrument is ambiguous and extrinsic evidence should be considered to ascertain the testator's intent. *See Davis v. Shanks*, 898 S.W.2d 285, 286 (Tex.1995); *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex.App.-Fort Worth 2003, pet. denied); *Myrick v. Moody*, 802 S.W.2d 735, 738 (Tex.App.-Houston [14th Dist.] 1990, writ denied). Evidence of the testator's situation, the surrounding circumstances, and like indicia which enable the court to place itself in the shoes of the testator at the time the document was executed may be admissible. *Lang*, 35 S.W.3d at 639. This is so because it may facilitate the determination of intent at that time. *See id.*

*Ademption*

"[A]demption describes the extinction of a specific bequest or devise because of the disappearance of or disposition of the subject matter given from the estate of the testator in his lifetime." *Stahl*, 610 S.W.2d at 148. Unless the testator specifically provides otherwise in the will, the sale or removal of a specific bequest from the estate adeems the devise or bequest. *Id.* at 150. A will speaks at the time of the testator's death, and only the estate the testator then possessed passes under the terms of the will. *Id.* When a specific devise of realty is adeemed because the testator sold it before his or her

death, absent a contrary intent expressed in the will, the beneficiaries of the realty under the will are not entitled to the sale proceeds; instead, the proceeds pass under the residuary clause. *Id.* at 150–52. The doctrine of ademption applies only to specific bequests and devises. *In re Estate of Brown,* 922 S.W.2d 605, 607 (Tex. App.-Texarkana 1996, no writ).

■■■■ A bequest or devise can be specific, general, demonstrative, or residuary. *Hurt v. Smith,* 744 S.W.2d 1, 4 (Tex. 1987). A devise or bequest is specific if it is described in the will with such particularity that the property is distinguished from all of the testator's other property, and the testator intended for the beneficiary to receive that particular item, rather than cash or other property from his or her general estate. *Id.* "No special words are required to make a bequest specific, though such words as 'my,' 'owned by me,' 'standing in my name,' or 'in my possession' are indicative of the specific character of the legacy." *Pinkston v. Pinkston,* 81 S.W.2d 196, 198 (Tex.Civ.App.-Eastland 1935, no writ). A legacy is a general bequest if it bequeaths a designated quantity or value of property or money and the testator intended for it to be satisfied out of her or his general assets rather than disposing of, or being charged upon, any specific fund or property. *Id.*

■■■■ Such classification depends on the intent of the testator as shown by the entire will. *Hurt,* 744 S.W.2d at 4. When classifying bequests in a will, we must consider the testator's intent by looking at the entire dispositive scheme, rather than reaching an arbitrary determination based on ritualistic classification. *Id.* It is necessary to determine, for each item bequeathed in the will, whether the testator intended the property to be disposed of as a specific asset, or merely as a portion of her or his general estate. *Id.*

A review of Beverly's entire will reveals that her clear intent was to devise Shady Glade to her sons as a specific asset. Shady Glade is described with great particularity in the "Stipulation of Ownership" referenced in the will. Beverly also distinguished it from all her other property in the disposition scheme. Considering the entire will, the only item of her property that she specifically provided for was Shady Glade. She disposed of all her other property through the residuary clause. She also devised "all my interest ... in Shady Glade," reflecting the specific character of the devise. *See Pinkston,* 81 S.W.2d at 198.

In addition, the will evidences Beverly's intent for her sons to receive that particular item, rather than cash or other property from her general estate. In her will, Beverly excluded her daughter, Bebe, from Shady Glade "due to the difficulties I have previously experienced with her husband, Richard N. Cole, and because I am satisfied that she has adequate means to ensure her future support and well-being." She specifically provided that her intention was for her two sons to receive Shady Glade. Therefore, her devise of that property was a specific one, subject to ademption.[2]

2. Libby contends that ademption is not favored by Texas courts. She cites no authority, however, supporting such a general proposition, and this Court has previously found that Texas courts apply the ademption doctrine when the appropriate circumstances are present, especially in the devise of specifically described real property. *In re Estate of Brown,* 922 S.W.2d 605, 608 n. 1 (Tex.App.-Texarkana 1996, no writ) (citing *Shriner's Hosp. for Crippled Children v. Stahl,* 610 S.W.2d 147, 150 (Tex.1980); *Rogers v. Carter,* 385 S.W.2d 563, 565 (Tex.Civ.App.-San Antonio 1964, writ ref'd n.r.e.); *Houston Land & Trust Co. v. Campbell,* 105 S.W.2d 430, 434 (Tex.Civ.App.-El Paso 1937, writ ref'd)). Courts do seem reluctant to apply the ademption doctrine in the case of a bequest of stock

Libby contends, and the trial court agreed, Beverly specifically provided for the proceeds from the sale of Shady Glade and, therefore, the devise should not be adeemed. The sale or removal of a specific bequest from the estate adeems the devise or bequest, unless the testator specifically provides otherwise in the will. *Stahl,* 610 S.W.2d at 150. Libby contends the following italicized language in Beverly's will evidences a contrary intent to ademption:

> I will, devise and bequeath all my interest in all that certain real and personal property located near Caddo Lake in northeastern Harrison County, and commonly known as Shady Glade (being the same property described in that certain Stipulation of Ownership executed by Dallas Harris and myself on October 21st, 1994, and recorded under Clerk's File # 10094–H in the Offices of the County Clerk for Harrison County, Texas) *together with all additions thereto and substitutions therefor,* . . . .

(Emphasis added.) Libby contends the phrase "together with all additions thereto and substitutions therefor" specifically provides for the proceeds from the sale of Shady Glade. Dallas contends this language is ambiguous and does not specifically provide for the disposition of the proceeds from the sale of Shady Glade, and extrinsic evidence is thus admissible to ascertain Beverly's intent.

This is not the type of phrase which has a settled legal meaning, akin to "real property" or "community or separate property." *See Lang,* 35 S.W.3d at 640 ("real property" has settled legal meaning which

does not include real estate liens and promissory notes); *Stewart v. Selder,* 473 S.W.2d 3, 11 (Tex.1971) (Calvert, C.J., concurring) (terms such as separate and community property are so clear, plain, and unambiguous they do not allow constructions other than those "ascribed to them in law"). It also cannot be said that the term "substitution," as used in this devise, carries a meaning "settled by usage and sanctioned by judicial decisions." *See Davis v. Shanks,* 898 S.W.2d 285, 286 (Tex.1995) (finding word "contents" had no settled legal meaning at time of testator's death; therefore, extrinsic evidence was admissible to show testator's intent). We have been unable to find where any court in the United States has addressed the meaning of a testator's reference to the "substitution" of property in this context, and whether such reference includes the proceeds from the sale of that property.

Courts have analyzed decedents' wills to determine if an intent contrary to ademption was provided. These cases, however, do not provide a clear guide in this case.

In *Opperman v. Anderson,* 782 S.W.2d 8, 9–10 (Tex.App.-San Antonio 1989, writ denied), the deceased's will bequeathed different stocks to certain beneficiaries, "together with all dividends, rights and benefits declared thereon at the time of my death, and all rights and benefits thereof." The deceased sold some of the stock before death, and the San Antonio court found the bequest was specific and adeemed the stock sold before death. *Id.* at 11. The appellees interpreted "rights and benefits" to include cash proceeds

---

because of the likelihood that the testator intended merely to treat the stock as a surrogate for cash. *See, e.g., O'Neill v. Alford,* 485 S.W.2d 935, 938–39 (Tex.Civ.App.-Houston [1st Dist.] 1972, no writ). Ademption, however, is also a long-standing doctrine in Texas jurisprudence, and we will apply it in the appropriate circumstances. *See, e.g., Stahl,*

610 S.W.2d at 150 (holding adeemed testator's bequest of her "home place" when she did not change terms of her will after home's sale); *Haley v. Gatewood,* 74 Tex. 281, 12 S.W. 25, 26 (1889) (holding that will speaks at time of testator's death and estate then possessed passes according to terms of will).

from the sale of the shares. *Id.* The court disagreed, finding that "rights and benefits" included only such things as voting rights and dividends, not the proceeds from the sale of the shares. *Id.*

In *Bates v. Fuller*, 663 S.W.2d 512, 514 (Tex.App.-Tyler 1983, no writ), the deceased provided that real estate owned at her death

> shall be sold by my Executor to pay all of my legally enforceable debts, funeral expenses, all costs of my last illness, costs and expenses of the administration of my estate, and Federal Estate Taxes, if any. After such debts, expenses and taxes have been paid, the balance of the proceeds remaining from the sale of my real estate, shall be divided equally among my three children.... ·

The court found that the testator's overall purpose and intent was clearly to make a bequest, under the above-quoted provisions, of the proceeds from the sale of "my real estate" to her three daughters, after payment of certain debts and expenses. *Id.* at 515. The court went on to hold that the devise was not adeemed by such sale since the proceeds were an identifiable part of the estate at the date of death. *Id.* at 516. Therefore, in *Bates*, the intent to provide for the proceeds from the sale of the property was specifically provided for in the devise. *See also In re Estate of Dublin*, 375 Pa. 599, 101 A.2d 731 (1954) (finding where devise of specific real estate described property as "under agreement of sale" was not adeemed by predeath sale of real estate); *In re Estate of Frost*, 354 Pa. 223, 47 A.2d 219 (1946) (finding testamentary gift of "proceeds" of General Motors stock did not adeem specific bequest from predeath sale of stock). This is not the situation in this case.

▮ Words of common use are given their plain and ordinary meaning unless it appears from the context they were used in a different sense. *Stahl*, 610 S.W.2d at 152; *Vinson v. Brown*, 80 S.W.3d 221, 231 (Tex.App.-Austin 2002, no pet.). We must, therefore, determine whether the plain, ordinary meaning of "together with all additions thereto and substitutions therefor" showed an intention by Beverly to provide for the proceeds from the sale of Shady Glade under the specific devise.

"Substitution" is defined as "the act, process, or result of substituting one thing for another." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1174 (10th ed.1993). The word "substitution" has also been defined to mean "to put in place of another thing"; "serves in lieu of another"; "having some of its parts replaced." *In re Estate of Cooke*, 147 Misc. 528, 264 N.Y.S. 336 (N.Y.Sur.Ct.1933). The word is a synonym for "change of one thing for another." *Id.* "Substituted," in its ordinary sense and well-known meaning, is something placed in a position previously occupied by another thing. *Id.* "Therefor" is defined to mean "for or in return for that." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1223.[3]

We find that the devise is reasonably susceptible to more than one meaning and that the instrument is, therefore, ambiguous. The phrase "together with all addi-

---

**3.** The definitions of the other words contained in the relevant phrase are as follows. "Together with" is defined as "in addition to." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1240 (10th ed.1993). "Additions" means to add to, to become united with, or to become a part of the subject or matter to which the addition is to be made. *Neblett v. R.S. Sterling Inv. Co.*, 233 S.W. 604, 609 (Tex.Civ.App.-Beaumont 1921, writ ref'd). "Additions" in this context can mean both additions to real and personal property. An "addition" to real property is "[a] structure that is attached to or connected with another building that predates the structure; an extension or annex." BLACK'S LAW DICTIONARY 38 (7th ed.1999). "Thereto" means "to that." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1223.

tions thereto and substitutions therefor" does not provide a clear indication of whether Beverly intended to include the proceeds from the possible future sale of Shady Glade in the devise to her two sons. In addition, the stated intent included in the devise does not indicate whether she intended to exclude Richard from only the business operations and management of the business, or whether she intended to also exclude him from all possible future benefits of the business, including proceeds from its sale.

On one hand, the provision providing for the "substitution" of Shady Glade could be interpreted to provide for any substitute for Shady Glade, the entity, including the complete substitution of the business for money or a promissory note. The devise for all the real and personal property of Shady Glade, "together with all additions thereto and substitutions therefor" could include anything added to Shady Glade or put in the place of or exchanged for Shady Glade, the business. This language appears broad enough to encompass any substitute for Shady Glade, including proceeds from its sale.

This language, however, could also be construed to include only the additions or substitutions to the real or personal property that comprised Shady Glade, but not the proceeds from the sale of that property. The description of Shady Glade in the "Stipulation of Ownership" provides a detailed description of the real property, along with a list of all the personal property, down to the appliances. Dallas contends the devise was of this specifically articulated property, and only additions to and substitutions for that specific property were intended, not the proceeds from its sale. Dallas also points out that, since Beverly meticulously described in the "Stipulation of Ownership" all the property, both real and personal, she was devising to her two sons, she would have also provided for

the proceeds from its sale with the same specificity in her will, had it been her intent to include such proceeds in her devise.

In addition, the paragraph setting out Beverly's intent in devising Shady Glade to her sons does not demonstrate a clear indication of whether Beverly intended to provide for the proceeds from the sale of Shady Glade. The devise includes the following paragraph, evidencing Beverly's intent in making the devise:

> I specifically exclude my daughter, Bebe Ann Hines Cole from this bequest due to the difficulties I have previously experienced with her husband, Richard N. Cole, and because I am satisfied that she has adequate means to ensure her future support and well-being. Under no circumstances do I wish Richard N. Cole to have any interest in or control over Shady Glade at any time, now or in the future.

Beverly's stated intent in devising Shady Glade was to ensure that Richard had no interest in or control over Shady Glade, "now or in the future," under any circumstances. Again, this provision is reasonably susceptible to more than one meaning. This paragraph could be construed to mean Beverly intended to exclude her daughter from the devise to ensure that her husband, Richard, could receive no possible benefits from the business at all, including any proceeds from its sale. It is evident, however, from Beverly's devise of one third of her residuary estate to Bebe, that she did not intend to exclude Richard from any possible participation in the benefits of her estate. On the other hand, the language under consideration could be construed to mean she intended to exclude her daughter and Richard only from the management or operations of Shady Glade as a business.

In a similar circumstance, the court in *Sammons*, 940 S.W.2d at 280–81, determined that a term in a will was capable of more than one meaning and extrinsic evidence was admissible to determine the testator's intent. The appellant complained the term "savings account and/or savings certificate" in a devise was not ambiguous. *Id.* at 280. The court first looked to the dictionary definition of the words used. *Id.* at 281. The court concluded that, in light of the lack of caselaw and the broad dictionary definition, the term was ambiguous in the context of the will and extrinsic evidence was admissible. *Id.*

Likewise, in this case, the dictionary definition of "substitutions" is broad and there is a complete absence of caselaw on whether proceeds is a substitute for a specific devise of real and personal property. The term "substitution" in the context of Beverly's will reasonably conveyed more than one meaning.

▬▬ An ambiguity can either be classified as a latent or patent ambiguity. A patent ambiguity is one apparent on the face of the will. *Brown*, 922 S.W.2d at 608. It arises on the reading of the will from the words themselves. *Id.* A latent ambiguity exists when the will appears to convey a sensible meaning on its face, but it cannot be carried out without further clarification. *Id.* at 608–09. In the past, extrinsic evidence was admissible only to explain a latent ambiguity, but not to explain a patent ambiguity. *Id.* at 609. The modern rule, however, admits extrinsic evidence to show the testator's intent, whether the ambiguity is latent or patent. *Id.*

We conclude the ambiguity in this case is patent. The devise of Shady Glade sets up a conflict from the words themselves. It is not clear from the devise whether Beverly intended to provide for the proceeds of Shady Glade. We conclude the will contains a patent ambiguity, and we will look to extrinsic evidence to determine Beverly's intent.[4]

*Summary Judgment Evidence*

▬▬ When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Bright*, 89 S.W.3d at 605. The reviewing court should render the judgment the trial court should have rendered. *Id.*

The extrinsic evidence in this case conclusively establishes Beverly's intent. The extrinsic evidence consists of two affidavits

---

4. In addition to contesting the ambiguity of the phrase, Libby contends Dallas did not plead ambiguity and, therefore, the court must only look to the four corners of the document to construe the instrument. Hines cites several cases in support of this proposition. *See Henderson v. Parker*, 728 S.W.2d 768 (Tex.1987) (neither party contended will was ambiguous); *Frost Nat'l Bank v. Newton*, 554 S.W.2d 149 (Tex.1977) (party did not contend will was ambiguous at appellate level); *Gibson v. Watson*, 315 S.W.2d 48, 53 (Tex.Civ.App.-Texarkana 1958, writ ref'd n.r.e.) (neither party pled deed was ambiguous and each party relied on it as written; therefore, court ascertained meaning of deed and intention of parties from language contained in deed). In *Robbins v. HNG Oil Co.*, 878 S.W.2d 351, 354 (Tex.App.-Beaumont 1994, writ dism'd w.o.j.), the court determined that the question of ambiguity was not raised at the trial court level; therefore, the construction of a deed became a question of law. The court looked to the motions for summary judgment, among the other pleadings, to determine whether an ambiguity had been raised. *Id.* In this case, Dallas did not plead ambiguity in the original petition, but he did contend the language of Beverly's devise of Shady Glade was ambiguous in his answer to Libby's response to the amended motion for summary judgment. The trial court also considered whether the devise was ambiguous, but concluded it was not. The issue of ambiguity, therefore, was properly raised at the trial court level.

attached to Dallas' amended motion for summary judgment. The first affidavit is his and states Beverly executed her will and the "Stipulation of Ownership" at the time of the settlement of the lawsuit with Richard. Dallas states that he was present during the discussions regarding the preparation of Beverly's will and that her intention was

to make sure that Richard Cole had no voice in the management of Shady Glade Camp,.... Since I was putting my money into the business and becoming a partner with her, my wife and I both wanted to make sure there would be no management problems with Mr. Cole in the event that my wife died before me.... I understood that my wife did not intend to make an [sic] permanent unequal division of her entire estate, but she wanted specifically to exclude Richard Cole from any voice in the management of Shady Glade Camp;....

J. Rodney Gilstrap, Beverly's attorney involved in the litigation with Richard Cole and who drafted the "Stipulation of Ownership" and Beverly's will, also submitted an affidavit. In that affidavit, he also outlines Beverly's intentions in devising Shady Glade.

Because of the business management problems with Mr. Cole, Mrs. Harris was adamant that Mr. Cole never have any involvement with the business.

There was no discussion ever with Mr. or Mrs. Harris about the possibility of selling Shady Glade Camp....

In describing the Shady Glade Camp business, I was very specific in including all the real estate owned by the business on or near Caddo Lake, and went on to specifically include all the personal property owned by the business. I incorporated into the will by reference the Stipulation of Ownership executed at the same time by Mr. and Mrs. Harris, which lists all the real and personal property owned by the business. The Stipulation of Ownership lists the canoe, the boats, the equipment, appliances, furnishing, furniture, supplies, linens, and other items owned by the business. In preparing Mrs. Harris' will, I stipulated that the bequest of Shady Glade Camp included not only those items, but "all additions thereto and substitutions therefor." It was my intent and understanding that this phrase would refer to any of the items of personal property which were acquired by the business after the making of the will, whether they were new items or items purchased to replace a lost or worn-out article. It was not my intent to suggest that the entire business might be sold and a note taken for the sale would be considered a "substitute" for the business. Although I never asked that specific question of Mrs. Harris, I am confident from our many, many discussions that she did not intend such a meaning for that phrase. I am sure as one may be, that Mrs. Harris intended and understood that the phrase, "together with additions thereto and substitutions therefor" referred to the acquisition or replacement of personal property then owned by the camp, as itemized on page four of the "Stipulation of Ownership" signed on the same date as the will. We carefully reviewed her will on more than one occasion before she executed it, and I was, and am, confident that we agreed on its meaning.

From these affidavits, it is apparent that, at the time of the execution of her will, Beverly did not contemplate the sale of Shady Glade, and the "substitution" for Shady Glade was not intended to encompass proceeds from its possible future sale. It is apparent that Beverly's intent in devising Shady Glade to her two sons was to exclude Richard only from control over the management and operations of Shady Glade, the business. It was not her intent

to exclude Richard and her daughter, Bebe, from all possible benefits of the property, including any future proceeds from its sale.

We reverse the trial court's determinations that the will was not ambiguous and provided an intent contrary to ademption. The devise was ambiguous as to the proceeds from the sale of Shady Glade, and the extrinsic evidence establishes that a sale was not contemplated by Beverly when she executed the will. Because the extrinsic evidence establishes that an intention contrary to ademption was not expressed, we find that the devise of Shady Glade was adeemed at her death and that the proceeds from its sale owing at that time passed pursuant to the residuary clause of the will.

We, therefore, reverse the trial court's order granting summary judgment for Libby, and for Bebe, as trustee for Cy Rickey, and render summary judgment for Dallas, as independent executor of Beverly's estate.