

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00021-CV
_____

IN THE ESTATE OF HOMER KEASLER JENKINS, DECEASED

On Appeal from the County Court at Law
Cass County, Texas
Trial Court No. P11547

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

This case involves the construction of Homer Keasler Jenkins's Last Will and Testament (Will). The trial court found that the Will specifically bequeathed funds from an individual investment account to Homer's wife, Linda Kaye Jenkins, and that those funds were not adeemed due to a transfer into another individual investment account at a different financial institution. As a result, the trial court awarded all funds in Homer's individual retirement account to Linda's estate. While we agree with the trial court that no ademption occurred, we must reverse the trial court's judgment because it appears that Linda predeceased Homer, and the trial court failed to consider the provision of the Will altering the specific bequest if Linda were not alive at Homer's death. As a result, we reverse the trial court's judgment and remand the matter to the trial court to consider the controlling provision of the Will.

## I.      Factual and Procedural Background

Homer's Will, signed on April 25, 2018, named his son, John Keasler Jenkins, as his independent executor. On John's application, the trial court admitted the Will to probate, appointed John independent executor, and issued letters testamentary.

The Will contained separate provisions for specific bequests and residuary bequests. Under the portion at issue, the Will states,

I hereby give, bequeath and devise the rest and residue of my estate as follows:

1.      I give to my spouse, LINDA KAYE JENKINS, all funds and other assets on deposit in the Homer K. Jenkins Oppenheimer Preferred Account No. G79-1352086 and the Homer K. Jenkins Oppenheimer IRA Account No. G87-7919923, and the motor vehicle which she customarily drives at the time of my death.

2

. . . .

9.      I give, devise and bequeath all the rest and residue of my estate to JOHN KEASLER JENKINS and SANDRA LOUISE JENKINS WILLIS in equal shares.

Linda's son, Clark Turner, as the independent administrator of Linda's estate, filed a petition to collect the funds in the Oppenheimer Preferred Account No. G79-1352086 ("the Oppenheimer Account").[1]  John and his sister, Sandra, answered, arguing that Clark was not entitled to a distribution because the Oppenheimer Account no longer existed and, hence, "was adeemed by extinction."

Both sides filed competing motions for summary judgment.  By agreement of the parties, the trial court heard the motion for summary judgment of John and Sandra first.  When presenting their ademption arguments, both sides conceded that the Will was not ambiguous.[2]  At the summary judgment hearing, the trial court reviewed the Will and commented:

If you look, it is very specific.  It names the two accounts, it gives cause numbers.  But then it also says all funds and other assets.  Obviously that's because Mr. Jenkins didn't know when he was going to pass away so he didn't know what was going to be in there.

He then further went on to say that if Mrs. Jenkins passed away before him, that her son would only receive $400,000 out of those accounts and the rest would go to the other family members.

. . . .

---

[1]No. G79-1352086 is referred to in the singular because the parties do not dispute that the Oppenheimer IRA (No. G87-7919923) was not a probate asset because it had been transferred, after the execution of the Will but before Homer's death, to a Fidelity account that had a beneficiary.

[2]John and Sandra urged:  "What you are doing is interpreting a clear and unambiguous will in a manner that shows that one of the specific bequests, the subject of that bequest, had adeemed by the time of the testator's death."  Clark conceded:  "I agree with the movant that we don't have an ambiguity."

So he specifically wanted the funds that were listed in number one to go to his wife if she survived him at the time. So the question becomes: Is that specific bequest adeemed?

Regarding the question of ademption, the trial court noted that the Oppenheimer account had been transferred to Fidelity by Homer's financial adviser, but neither side knew the particulars of that transfer, such as whether the Fidelity account had its own funds or instead was composed solely of a transfer of the funds and assets of the Oppenheimer account, along with any post-transfer growth of those funds. On that, the trial court figured that there was a fact question and that it would be best to hold a trial to hear from the financial adviser. The parties agreed with that approach. The summary judgment hearing concluded with the trial court denying both motions.

At trial, Homer's financial advisor from 2009 until death, Alan Haworth, explained that he had managed Homer's investment accounts held at Oppenheimer & Co., Inc., but "left Oppenheimer and transitioned with a number of [his] existing clients to Clare Market Investments, LLC." According to Haworth, Homer had "the securities held in the Oppenheimer Accounts . . . transferred to Fidelity Investments ("Fidelity") by in-kind transfer through the Automated Customer Account Transfer Service." Haworth explained, "[T]he shares that were at Oppenheimer for the stocks he owned did transfer equally to the new Fidelity account."

A statement from August 31, 2018, showed that the Oppenheimer Account had a balance of $1,374,672.76. The Transfer of Assets form showed that Homer transferred the balance in the Oppenheimer Account to a Fidelity account on September 15, 2018, and that both accounts were

4

individual, non-retirement, investment accounts. On the form, Homer specifically checked a box that authorized transfer of "the entire account."

After hearing that evidence, the trial court entered a final judgment in Clark's favor, finding that Homer "made a specific bequest to his surviving spouse, Linda Kaye Jenkins, of all 'funds and other assets on deposit'" in the Oppenheimer Account, that "the specified 'funds and other assets on deposit' comprising the specific bequest to Linda Kaye Jenkins were transferred to a Fidelity account," and that the "bequest did not . . . adeem by extinction because those funds and other assets existed at the time of Homer Keasler Jenkins' death." Thus, the trial court found that "[t]he specific bequest to Linda Kaye Jenkins consist[ed] of all funds and other financial assets which were on deposit in the Fidelity account . . . at the time of Decedent's death." It ordered John to deliver to Clark, as Independent Administrator of Linda's estate, all funds in the Fidelity account, which totaled $1,377,663.87. In other words, the final judgment of the trial court implemented "I give to my spouse, LINDA KAYE JENKINS, all funds and other assets on deposit in the Homer K. Jenkins Oppenheimer Preferred Account No. G79-1352086" by ordering the Fidelity account paid to Clark as Independent Administrator of Linda's estate.

Yet, the record also establishes that Linda died on March 8, 2022, and Homer died on October 16, 2022. Linda's date of death was provided in Clark's live pleading, the first amended petition. It does not appear that the parties brought to the trial court's attention that Linda predeceased Homer, whether at the summary judgment hearing or at trial. Indeed, on appeal, Clark's "Statement of Facts" states that "Decedent died in October 2022. Linda survived him

5

but died during the administration of his Estate," but there is no citation to the trial court record for this proposition. John and Sandra did not contest that assertion.

As indicated by the trial court's comments at the summary judgment hearing, the Will also contains the following provision:

> If my spouse, LINDA KAYE JENKINS does not survive me, I give to her son, CLARK BRODIE TURNER the sum of $400,000.00 from the Oppenheimer Account No. G79-1352086. The balance of the property which I would otherwise leave to LINDA KAYE JENKINS, I give to my daughter, SANDRA LOUISE JENKINS WILLIS.

Therefore, whether or not Linda predeceased Homer, the question of ademption is presented. If there was ademption, then the disputed funds go to Homer's estate. If there was no ademption, then the next question is whether the funds go to Linda's estate (assuming Linda survived Homer) or to Clark and Sandra.

## II.     Standard of Review

"The construction of an unambiguous deed or will presents a question of law that we review de novo." *Jordan v. Parker*, 659 S.W.3d 680, 684 (Tex. 2022). "Whether a will is ambiguous is a question of law for the court." *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) (per curiam). "A court must construe a will as a matter of law if it has a clear meaning." *Id.* "The cardinal rule of will construction is to ascertain the testator's intent and to enforce that intent to the extent allowed by law." *Id.* "We look to the instrument's language, *considering its provisions as a whole* and attempting to harmonize them so as to give effect to the will's *overall* intent." *Id.* (emphasis added).

6

Here, there is no ambiguity. The parties do not offer competing definitions for any of the words in "I give to my spouse, LINDA KAYE JENKINS, all funds and other assets on deposit in the Homer K. Jenkins Oppenheimer Preferred Account No. G79-1352086." That was a specific bequest, and the parties do not contend otherwise. Nor do the parties dispute that assets in the Oppenheimer Account were the same assets transferred into the Fidelity account. In plain language, the parties' dispute is whether the bequest was of (1) the "funds and other assets" in the Oppenheimer Account, or (2) the Oppenheimer Account, whatever it may (or may not) contain. In legal parlance, the parties dispute whether the transfer of "all funds and other assets" from Oppenheimer to Fidelity constituted an ademption under Texas law.

Therefore, whether or not there was an ademption is a question of law we review de novo when considering the provisions of the Will "as a whole" to give effect to "the will's overall intent." *Id.*

## III. The Trial Court Properly Found that No Ademption Occurred

The issue on appeal raised by the parties questions whether the Oppenheimer Account was adeemed. "[A]demption describes the extinction of a specific bequest or devise because of the disappearance of or disposition of the subject matter given from the estate of the testator in his lifetime." *Harris v. Hines*, 137 S.W.3d 898, 903 (Tex. App.—Texarkana 2004, no pet.) (alteration in original) (quoting *Shriner's Hosp. for Crippled Child. of Tex. v. Stahl*, 610 S.W.2d 147, 148 (Tex. 1980)). "Unless the testator specifically provides otherwise in the will, the sale or removal of a specific bequest from the estate adeems the devise or bequest." *Id.* (citing *Stahl*, 610 S.W.2d at 150 ("Absent a contrary intention expressed in the will, the alienation or

7

disappearance of the subject matter of a specific bequest from the testator's estate adeems the devise or bequest.")). This is because "[a] will speaks at the time of the testator's death, and only the estate the testator then possessed passes under the terms of the will." *Id.* (citing *Stahl*, 610 S.W.2d at 150). "It is well settled that lapsed bequests pass into the residuary absent a contrary intent expressed clearly in the will." *Stahl*, 610 S.W.2d at 152.

Even so, "[t]he doctrine of ademption applies only to specific bequests and devises." *Hines*, 137 S.W.3d at 904 (citing *In re Est. of Brown*, 922 S.W.2d 605, 607 (Tex. App.—Texarkana 1996, no writ)). "A bequest or devise can be specific, general, demonstrative, or residuary." *Id.* (citing *Hurt v. Smith*, 744 S.W.2d 1, 4 (Tex. 1987)). A will leaves a specific bequest "if it is described in the will with such particularity that the property is distinguished from all of the testator's other property, and the testator intended for the beneficiary to receive that particular item, rather than cash or other property from his or her general estate." *Id.* (citing *Hurt*, 744 S.W.2d at 4). Conversely, a bequest is general "if it . . . designate[s] quantity or value of property or money and the testator intended for it to be satisfied out of her or his general assets rather than disposing of, or being charged upon, any specific fund or property." *Id.*

"Such classification depends on the intent of the testator as shown by the entire will." *Id.* (citing *Hurt*, 744 S.W.2d at 4). "This intent must be ascertained from the language found within the four corners of the will." *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000) (citing *Stahl*, 610 S.W.2d at 151). "If the will is unambiguous, a court should not go beyond specific terms in search of the testat[or]'s intent." *Id.* It is well-settled "that when there is no dispute about the meaning of words used in a will, extrinsic evidence will not be received to

8

show that the testat[or] intended something outside of the words used." *Id.* "The court should focus not on 'what the testat[or] intended to write, but the meaning of the words []he actually used.'" *Id.* (quoting *Stahl*, 610 S.W.2d at 151). "In this light, courts must not redraft wills to vary or add provisions 'under the guise of construction of the language of the will' to reach a presumed intent." *Id.* (quoting *Stahl*, 610 S.W.2d at 151).

"When classifying bequests in a will, we must consider the testator's intent by looking at the entire dispositive scheme, rather than reaching an arbitrary determination based on ritualistic classification." *Hines*, 137 S.W.3d at 904 (citing *Hurt*, 744 S.W.2d at 4).[3] "It is necessary to determine, for each item bequeathed in the will, whether the testator intended the property to be disposed of as a specific asset, or merely as a portion of her or his general estate." *Id.* (citing *Hurt*, 744 S.W.2d at 4).

The trial court determined that the Will's language stating, "I give to my spouse, LINDA KAYE JENKINS, all funds and other assets on deposit in the Homer K. Jenkins Oppenheimer Preferred Account No. G79-1352086" was a specific bequest, and John does not contest the trial court's characterization. We agree that that portion of the Will identifies the assets and funds bequeathed to Linda, it does not show an intent to satisfy the devise from the general estate, and as a result, is a specific bequest. *See Hurt*, 744 S.W.2d at 5; *Hines*, 137 S.W.3d at 904; *see also McGee v. McGee*, 413 A.2d 72, 76 (R.I. 1980) ("When a will bequeaths 'the money owned by

---

[3]"We interpret the words in a will as a layperson would use them absent evidence that the testator received legal assistance in drafting the will or was otherwise familiar with technical meanings." *Knopf*, 545 S.W.3d at 545. While a "court may *always* receive and consider evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator's position at the time," *Lang*, 35 S.W.3d at 639 (quoting *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex. 1971)), "this broad approach to the admissibility of extrinsic evidence applies only when a term is open to more than one construction," *id.*

one which is on deposit' in a designated bank, although the amount remains unspecified, the gift is nevertheless identifiable and definite, apart from all other funds or property in the testator's estate; and the legacy is specific." (quoting *Willis v. Barrow*, 119 So. 678, 680 (Ala. 1929))).

"Only the alienation or disappearance of the subject matter of a specific devise or bequest from the settlor's estate adeems the devise or bequest." *Eckels v. Davis*, 111 S.W.3d 687, 697 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Stahl*, 610 S.W.2d at 150) (finding that even though a bequest of assets in a particular account number was specific, no ademption occurred when the financial institution assigned a different number to the account).

Here, the funds and assets in the Oppenheimer Account were not depleted or substantially changed in form. Rather, the funds therein were transferred from one individual account to another account at a different financial institution by in-kind transfer. In such circumstances where "the property which is the subject of the trust corpus is present at the settlor's death, there is no ademption." *Id.* (citing *Bates v. Fuller*, 663 S.W.2d 512, 516 (Tex. App.—Tyler 1983, no writ) ("Where . . . the property which is the subject of the bequest is present at death, the rule is satisfied.")). "In other words, the operation of the orthodox rule would result in an ademption here if the proceeds were not traceable at the time of the death of [the deceased]. Since they were [traceable], there was no ademption." *Bates*, 663 S.W.2d at 516; *see O'Neill v. Alford*, 485 S.W.2d 935, 940 (Tex. App.—Houston [1st Dist.] 1972, no writ) (finding no ademption where there was "a change of form of the bequest rather than one of substance"); *see also McGee*, 413 A.2d at 76 ("In accordance with the generally accepted 'form and substance rule,' a substantial change in the nature or character of the subject matter of a bequest will operate as an ademption;

10

but a merely nominal or formal change will not." (citing *In re Peirce*, 54 A. 588 (R.I. 1903) (per curiam) ("no ademption since transfer of stock after consolidation of banks without formal liquidation was exchange and not sale"); *Willis*, 119 So. 678 ("no ademption by transfer of money from named bank to another since place of deposit was merely descriptive"); *In re Hall*, 160 A.2d 49 (N.J. 1960) ("no ademption by transfer of the money from banks designated in will to another one since location was formal description only and did not affect substance of testamentary gift"))).

The focus remains on the "funds and other assets" in the Oppenheimer Account even when looking at the provision of the Will applicable in the event that Linda did not survive Homer. That provision specifically mentions $400,000.00 from the Oppenheimer Account, but that is followed immediately by a statement concerning "[t]he *balance* of the property which [Homer] would otherwise leave to LINDA KAYE JENKINS." (Emphasis added). Which is to say the $400,000.00 is to be taken out of, and thus, is part of the property that would go to Linda in the event she survived Homer. So, the analysis circles back to what would happen in the event that Linda survived Homer. As discussed above, that analysis leads to the answer that there was no ademption. What is more, the evidence is that the Oppenheimer Account had been closed before Homer died. As a result, if that operated as an ademption (in other words, if the focus were on Oppenheimer Account No. G79-1352086 rather than the contents of that account), then it would be impossible to give Clark $400,000.00 from an account that no longer existed. Leaving Clark with nothing in the event that Linda did not survive Homer would be contrary to

11

Homer's wishes. This is further evidence that the Will, taken as a whole, speaks to Homer's intent regarding the funds and assets in the Oppenheimer Account.

As a result, we conclude that the trial court properly found that the funds transferred from the Oppenheimer Account to the Fidelity Account were not adeemed.

## IV. We Remand for a Determination of Linda's Date of Death

As noted above, if there was no ademption, the next question is: "Who gets the funds?" Clark's live pleading in the trial court is clear, deliberate, and unequivocal: Linda predeceased Homer. Clark's original petition said so, as did his amended petition. "A clear, deliberate, and unequivocal factual allegation made in a live pleading and not pleaded in the alternative constitutes a judicial admission that conclusively establishes the fact and bars the pleader from disputing it." *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 839 (Tex. 2022) (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000)).

John and Sandra, however, filed a general denial to Clark's original petition. That general denial covered "each and every allegation in Plaintiff's Original Petition," which would include Linda's date of death. That general denial applies to the amended petition. *See* TEX. R. CIV. P. 92 ("A general denial of matters pleaded by the adverse party which are not required to be denied under oath, shall be sufficient to put the same in issue. When the defendant has pleaded a general denial, and the plaintiff shall afterward amend his pleading, such original denial shall be presumed to extend to all matters subsequently set up by the plaintiff."). In short, "[i]f a party files a general denial in the trial court, that pleading puts a plaintiff to his or her

12

proof on all issues, including liability; its effect extends to contesting liability in the event of remand on appeal." *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (per curiam).

So, based on the pleadings and the record before us, the date of Linda's death in relation to Homer is an open question. At trial, no evidence was offered regarding the date of Linda's death.

Following the trial, despite having taken the position in the pleadings that Linda *predeceased* Homer, Clark sought judgment on the basis that Linda had *survived* Homer. Thereafter, John and Sandra filed multiple requests for findings of fact, but those requests did not challenge Clark's about-face on that question. John and Sandra (especially Sandra) had ample reason to challenge Clark on this; it makes the difference between Linda's estate receiving all of the funds on the one hand, or on the other, Clark receiving $400,000.00 and the remainder going to Homer's daughter.[4]

The trial court's statement from the bench at the conclusion of trial sheds light on the matter. When announcing the finding of no ademption, the trial court observed:

> I further believe [Homer's] intent was clear because in Section 7 under the alternate bequest, in the third one he says, If my spouse Linda K. Jenkins does not survive me, I give to her son, Clark Brody [sic] Turner, the sum of $400,000 from the Oppenheimer [A]ccount, under the same number we're arguing today. The balance of the property which I would otherwise leave to Linda Kaye Jenkins, I give to my daughter, Sandra Louise Jenkins Willis.

> It is hard for this Court to believe that *if Mrs. Jenkins would have passed first*, we'd be sitting in this courtroom with brother telling sister she ain't getting her money.

(Emphasis added).

---

[4]That sum is the result of $1,377,663.87 minus $400,000.00.

13

Thus, as was the case at the summary judgment hearing, the trial court was aware of the Will's provision regarding what would happen to the funds in the Oppenheimer Account should Linda predecease Homer. At the summary judgment hearing, however, the trial court spoke evenhandedly, as though the trial court did not know when Linda had died in relation to Homer. At trial, though, the trial court spoke as though it had been informed that Linda survived Homer. It is possible that the parties communicated that to the trial court when communicating that their dispute had been narrowed to the one account, the Oppenheimer Account, but we have no record on this matter.

We also have discretion to remand in the "interests of justice." TEX. R. APP. P. 43.3(b). "[T]he question of whether to render or remand is one regarding which appellate courts are given broad discretion." *Dahlberg v. Holden*, 238 S.W.2d 699, 704 (Tex. 1951) (op. on reh'g). Whether the record is fully developed is a consideration in that analysis. *Id.* ("From a consideration of the record as a whole, we are not satisfied that the case has been fully developed with respect to the title to the two-thirds interest."); *In re E.W.*, 494 S.W.3d 287, 301–02 (Tex. App.—Texarkana 2015, no pet.) ("[I]t is apparent here that the parties and the trial court were confused as to what evidence had been submitted for the trial court's consideration.").

This case comes before us on de novo review where we are tasked with giving effect to Homer's Will, taking into account all of the provisions of his Will. *See Jordan*, 659 S.W.3d at 684; *Knopf*, 545 S.W.3d at 545. Our task, in short, is to implement *Homer's* wishes as expressed in his Will, regardless of whether the parties fully present the case. *See Jordan*, 659 S.W.3d at 684; *Knopf*, 545 S.W.3d at 545. On appeal, Clark's assertion that Linda survived Homer is

uncontested, but it is not supported by a citation to the record. *See* TEX. R. APP. P. 38.1(g) ("The statement must be supported by record references.").

Therefore, we remand to the trial court for a determination of Linda's date of death in relation to that of Homer.

## V.      Conclusion

We, therefore, affirm the trial court's finding that there was no ademption, but we reverse the portion of the trial court's order calling for distribution to Clark as the independent administrator of the estate of Linda. We hold that there is no record evidence to show Linda's date of death. Linda's date of death must be shown in order to determine whether the funds and assets at issue should be distributed on the basis of Linda predeceasing Homer or on the basis of Linda surviving Homer. We therefore remand to the trial court with instructions to determine whether or not Linda survived Homer. Once that determination is made, the trial court is to render judgment based on the trial court's finding, which we affirm, that there was no ademption.


Charles van Cleef
Justice

Date Submitted:      September 9, 2025
Date Decided:        October 22, 2025